James P. JACKLITCH et al., Plaintiff,

Gene P. King, Intervenor,

v.

REDSTONE FEDERAL CREDIT UNION, Defendant.

Civ. A. No. 74–L–896–NE.

United States District Court,
N. D. Alabama,
Northeastern Division.

Jan. 15, 1979.

Philip A. Geddes and Charles G. Spradling, Huntsville, Ala., for plaintiff and intervenor.

Edgar E. Smith of Humphrey & Smith, Huntsville, Ala., for defendant.

## MEMORANDUM OPINION

LYNNE,[*] Senior District Judge.

### Background

This action was filed on September 6, 1974, as a class action seeking recovery under 15 U.S.C. § 1640(a) for defendant's alleged violations of the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA), and Federal Reserve Regulation Z, 12 C.F.R. § 226.1 et seq.

 On February 19, 1975, by separate order the Court denied the credit union's motion to dismiss the action based upon the pendency in state court of a detinue action brought by the credit union against the named plaintiff herein. *Ermentrout v. Commonwealth Oil Co.,* 220 F.2d 527 (5th Cir. 1955).

 Also by separate order the Court granted plaintiff's motion to dismiss the credit union's counterclaims against Jacklitch and all other members of the plaintiff class in default on their loans with the defendant. Being of the opinion that such counterclaims are permissive only, the Court concluded that allowance thereof would unduly complicate resolution of TILA claims with their common questions of law and facts.[1]

It was discovered that because of the peculiar nature of his credit transaction with the defendant, the originally named plaintiff, Jacklitch, might not be a proper class representative. The Court on March 26, 1976, permitted Gene P. King to intervene as an individual and representative plaintiff, following a hearing at which the Court determined that the dominant purpose of Mr. King's loan from the credit union was "personal, family, or household" rather than business or commercial in nature. *See* 15 U.S.C. §§ 1631(a), 1602(h), and 1603(1).

 By order dated November 27, 1977, and amended January 13, 1978, the Court certified this case as a class action pursuant to Rule 23 on behalf of all individuals entering into consumer credit loan transactions with the defendant in which defendant purported to take a security interest in personal property other than shares in the credit union during the period June 6, 1974, through June 5, 1975. Appropriate notice

---

[*] This opinion in major part was drafted by Jay Guin, Law Clerk, which the Court is quick to acknowledge.

1. It may be suspected that district court opinions to the contrary were mere shibboleths upon which to rest a determination that a class action was not to be maintained because of difficulties likely to be encountered in its management. Rule 23(b)(3)(D). Analytically, it would seem that a claim to recover property described in a contract conveying a security interest does not arise out of a debtor's claim for a statutory penalty for the creditor's failure to make the credit terms disclosures required by TILA within the purview of Rule 13(a) FRCP. Language found in *Spartan Grain & Mill Co. v. Ayers,* 581 F.2d 419, 430 (5th Cir. 1978), is supportive of this reasoning, although it may be considered dictum. Other cases now pending in that court may produce a definitive ruling.

in a form approved by the Court was mailed to each class member at his last known address in accordance with Rule 23(c), and the time for "opting out" expired March 15, 1978.

This case is before the Court on motions for summary judgment filed by defendant on May 27, 1975, and October 5, 1978, and by plaintiff on April 10, 1975. Considering the pleadings and discovery on file, the Court finds that the Redstone Federal Credit Union is a creditor within the meaning of the Truth in Lending Act, and that the transaction between the credit union and plaintiff-intervenor King was a consumer credit transaction requiring disclosure under the Act and Regulation Z.

## I. THE INDIVIDUAL CLAIM OF PLAINTIFF JACKLITCH.

The original loan transaction involving Jacklitch occurred on November 22, 1972. This loan was extended on March 29, 1974. The statute of limitations for a truth in lending claim is one year. 15 U.S.C. § 1640(d). Thus, since suit was filed on September 6, 1974, any claim by Jacklitch must be based on the extension of the loan and not on the original loan.

■ Defendant has filed an affidavit to the effect that the extension was a simple "deferral or extension." This affidavit has not been controverted by the plaintiffs. Under 12 C.F.R. § 226.8(*l*), no disclosures are required where there is no charge for a simple extension. Disclosures are only required where the extension involves a refinancing, consolidation, or increase in the former obligation. 12 C.F.R. § 226.8(j). Thus, as to the individual plaintiff, Jacklitch, this cause should be dismissed.

## II. NATURE OF THE DEFENDANT'S SECURITY INTEREST.

■ The form used by Redstone Federal Credit Union incorporates a security agreement from the back of the form providing that the debtor grants a security interest in the property described on the front of the form "AND any accessions, replacements and additions hereafter attached thereto;

also any increase, progency [sic] or produce thereof; and all after-acquired property that may be identified as above described." Plaintiff contends that this language creates a security interest subject to the 10 day limitation of *Code of Alabama* § 7–9–204(4)(b) (1975). This section provides,

(4) No security interest attaches under an after-acquired property clause:
(a) . . .
(b) [t]o consumer goods other than accessions (§ 7–9–314) when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value.

If the above-quoted language of the security agreement is broader than the exception for accessions above and for proceeds in § 7–9–306, then the security interest is subject to the 10 day limitation. Neither the term "replacements" nor the term "additions" can be construed as necessarily referring only to accessions or proceeds. Clearly, the draftsman thought that the two terms could not be subsumed in the term "accessions," or else the draftsman would not have added the two terms he knew to be superfluous.

The property given for security in the King transaction, for instance, was an automobile. A replacement for that automobile would be another car purchased after the first car was sold. If that car was purchased with the funds and only the funds derived from the sale of the first automobile, the second automobile would constitute proceeds. But if the second automobile were bought with funds independently derived or only partly with such funds, then the second automobile would still be a replacement, but would not be proceeds. It would be a consumer good and would be included under the literal terms of the after-acquired property clause.

The term "additions" is broader than the term "accessions." "Accessions" is defined in § 7–9–314 as goods "installed in or affixed to other goods" which "become part of a whole." This definition is consistent

with prior case law. *See* Annot., 43 A.L. R.2d 813 (1955). New tires, a radio, or a tape deck would certainly be additions to an automobile, but under the cases digested in the annotation would not be accessions. Thus, the terms of the security agreement include after-acquired consumer goods other than accessions. The creditor's rights to such goods are limited by the 10 day limitation, but this limitation appears in neither the security agreement nor the disclosure statement.

Compare the discussion of a similar provision in *Gilbert v. Southern Discount Co.,* No. 74–1417A (N.D.Ga., filed June 23, 1975).

### III. FAILURE TO PROPERLY DISCLOSE PROPERTY COVERED BY A SECURITY AGREEMENT.

■ Paragraph (H) of the disclosure statement states as follows: "*Security Interest.* The Security Agreement will secure future or other indebtedness and will cover after-acquired property." There is no disclosure that the after-acquired property clause will only be effective as to consumer goods purchased by the borrower within 10 days of the loan transaction. Thus, the contract and disclosure statement both overstate the nature of the creditor's interest. Though some disagreement exists, it is clear in this circuit that the failure to disclose the 10 day limitation is a violation of Regulation Z, § 226.8(b)(5). *Pollock v. General Finance Corporation,* 535 F.2d 295 (5th Cir. 1976), *aff'd on reh.* 552 F.2d 1142 (5th Cir. 1977), *cert. denied* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 776 (1977); *Basham v. Finance America Corp.,* 583 F.2d 918, 924 (7th Cir. 1978).

Defendant's reliance on *In re Dickson,* 432 F.Supp. 752 (W.D.N.C.1977), to obtain a different result will not at all do. As noted above, the law in this circuit is to the contrary.

Defendant has also argued that the disclosure should be read as incorporating the security agreement on the back. However, the disclosures must be sufficient in and of themselves. *Edmondson v. Allen-Russell Ford,* 577 F.2d 291, 295 (5th Cir. 1978).

Disclosures can be made but on one side of a piece of paper. Regulation Z § 226.8(a).

### IV. DEFENSES OF DEFENDANT.

■ (A) *Statute of Limitations.* The defendant contends that the one-year statute of limitations bars the claim of all unnamed plaintiff class members since the class was not certified until November 22, 1977. However, the law is well established that the claim of the class members relates back to the date of the filing of the complaint in the name of the class. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 553–54, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Satterwhite v. City of Greenville,* 578 F.2d 987, 997 (5th Cir. 1978) (*en banc*).

■ (B) *Bona Fide Error Defense.* Defendant claims that under 15 U.S.C. § 1640(c) it has a defense, alleging that any violation resulted from a mistake or ignorance of law. However, it is now firmly established that § 1640(c) provides a defense only for clerical errors. *McGowan v. King, Inc.,* 569 F.2d 845, 849–850 (5th Cir. 1978); *Haynes v. Logan Furniture Mart,* 503 F.2d 1161, 1166 (7th Cir. 1974).

(C) *Good Faith Defense Under 15 U.S.C. § 1640(f) Prior to Amendment in 1976.* Defendant has demonstrated good faith reliance on a pamphlet issued by the Federal Reserve Board, *What You Ought to Know About Federal Reserve Regulation Z, Truth in Lending/Consumer Credit Cost Disclosure* (1969). This pamphlet has been referred to both as *What You Ought to Know About Federal Reserve Regulation Z* and as *What You Ought to Know About Truth in Lending.* It has not been revised since its original publication.

■ On March 29, 1974, the following subsection was added to § 1640:

(f) No provision of this section or § 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board, notwithstanding that after such act or omission has occurred, such rule, regulation, or interpretation is

amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

Pub.L. No. 93–495 § 416. The amending act provided that the section would have retroactive application as to all claims except those which had been determined by a final judgment which were no longer reviewable. Pub.L. No. 93–495 § 408(e). Thus, assuming that the amendment is constitutional,[2] this defense is available to the defendant. However, the defendant cannot prevail in this instance since the pamphlet does not constitute a "rule, regulation, or interpretation thereof by the Board."

Relying on the legislative history of the amendment, the Second Circuit held in *Ives v. W. T. Grant Co.,* 522 F.2d 749, 758 (2d Cir. 1975), "Thus, it appears that the reference in subsection (f) to 'any rule, regulation, or interpretation thereof by the Board' means those requirements of Truth in Lending that have become part of Regulation Z, 12 C.F.R. § 226." The court dealt with the same pamphlet at issue here and held that it could not be the basis for a good faith defense. 522 F.2d at 757, 758. This holding was adopted by the Fifth Circuit in *Pennino v. Morris Kirschmann Co.,* 526 F.2d 367, 371 n. 8 (5th Cir. 1976).

(D) *Good Faith Defense Under § 1640(f) as Currently Amended.* In 1976 the scope of subsection (f) was expanded by the enactment of Public Law 94–240. The section now reads as follows:

(f) No provision of this section or § 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, . . . .

The amending act had no provision for retrospective effect.

Defendant contends that the Fifth Circuit has held this second amendment to be retroactive. The following language appears in *Pollock v. General Finance Corp.,* 552 F.2d 1142, 1144 (5th Cir. 1977):

On February 27, 1976, Congress enacted Public Law No. 94–222, § 3(d) of which appears to extend the § 1640(f) defense to cover Staff Opinion letters. . . . We find it reasonable to assume, moreover, that this extended defense is available in any case wherein review is still available, "whether by appeal or otherwise." Section 408(e) of P.L. 93–495 (Oct. 28, 1974), 1974 U.S.Code, Cong. and Ad.News, p. 6119. It is not necessary, however, that we decide this issue, which might require a remand to the finder of fact, because we conclude *infra* that the penalty imposed in this case was justified by other violations.

(footnotes omitted). The last sentence of the quotation makes it clear that the Fifth Circuit language is only dictum. The Court of Appeals was apparently not fully briefed

---

**2.** *Black, infra,* suggests a rationale for holding that the 1976 amendment to § 1640(f), and implicitly the retroactive provision of the Act creating § 1640(f), is unconstitutional. The district court, as does this Court, refrains from specifically basing its opinion on constitutional grounds in that it finds, as this Court finds, that the statute can be found non-retroactive on non-constitutional grounds. However, the district court hinted broadly that it felt the rationale may be valid. The argument is as follows:

A cause of action, once vested by the satisfaction of conditions precedent to suing, is a property right protected by the Fifth and Fourteenth Amendments. Thus, no action by the United States or any state can deprive the owner of the cause of action without just

compensation. Thus, it would be unconstitutional to retroactively repeal a statute as to those persons who had vested causes of action under that statute. There is no distinction between that case and the case where a defense is made retroactively applicable as to those persons whose causes of action would be rendered unenforceable by the defense. A cause of action is a right to sue and prevail, and the retroactive application of a statutory defense would necessarily destroy that right. *See, e. g., Coombes v. Getz,* 285 U.S. 434, 442, 52 S.Ct. 435, 76 L.Ed. 866 (1932); *Keller v. Dravo Corp.,* 441 F.2d 1239, 1242 (5th Cir. 1971); *Barr v. Preskitt,* 389 F.Supp. 496, 498 (M.D.Ala.1975).

as to the many considerations which would point to a contrary conclusion. Thus, it is appropriate to consider the retrospective effect of the second amendment independent of this statement by the Fifth Circuit.

 In a well-reasoned, thorough opinion the District Court for the District of Columbia has determined that the second amendment has no retroactive application. *Black v. G. B. Enterprises, Inc.,* No. 75–890 (D.D.C., filed Jan. 6, 1977). *Accord, Langley v. Walker-Thomas Furniture Co.,* No. 75–690 (D.D.C., filed March 10, 1978); *Copley v. Rona Enterprises, Inc.,* 423 F.Supp. 979, 981 n. 1 (S.D.Ohio 1976). In *Black* the Court considered the constitutional question discussed *infra* n. 2, but based its holding on general rules of statutory construction. The Supreme Court has repeatedly held that a statute will not be found to operate retrospectively unless the intention appears unequivocally, especially if the retrospective operation interferes with antecedent rights. *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); *Hassett v. Welch,* 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858 (1938); *Miller v. United States,* 294 U.S. 435, 439, 55 S.Ct. 440, 79 L.Ed. 977 (1935). There is nothing on the face of the amendment to indicate a retrospective intention. The legislative history does not indicate such an intention. In a similar amendment, the one originally creating subsection (f), Congress clearly expressed a retrospective intent. There is no reason why Congress would not do so in this case if that was its intention. Congress is fully aware of the rule the statutes are presumed to be prospective only.

There is evidence, in fact, of a prospective intent. The statute allows good faith reliance on an interpretation only when the staff member is "duly authorized by the Board to issue such interpretations." Such authorization would require a specific action of the Federal Reserve Board, and this action did not occur until July of 1976 when Regulation Z was amended by the addition of § 226.1(d). No authorization existed prior to this regulation. Moreover, any interpretation must be given in accord with "such procedures as the Board may prescribe therefor." The language "may prescribe" is forward looking only. Congress did not say "has prescribed."

The Federal Reserve Board has demonstrated its agreement with this conclusion by comments published with the above-cited regulation:

> This authorization has no retroactive effect on the previously issued staff opinion letters. However, the designated officials may in the future give official effect to specific previously stated staff opinions.

41 Fed.Reg. 28,255 (July 9, 1976).[3]

The authorization by way of regulation did not become effective until July 30, 1976. *See also* 122 Cong.Rec. S1547 (daily ed. Feb. 6, 1976) (remarks of Sen. Garn).

 Following the above-outlined reasoning, the Court in *Black* dealt specifically with the pamphlet at issue here, and found it not to be a basis for a good faith defense under either version of § 1640(f).

The pamphlet is inappropriate for a good faith defense also because of its unofficial nature. Regulation Z, § 226.1(d)(3) and (4), indicates that the staff of the Board can issue both official and unofficial interpretations. Only the director and other officials of the Division of Consumer Affairs can issue official interpretations. Thus, the defendant must demonstrate that the pamphlet is official and that it is issued by the Division of Consumer Affairs.

There is nothing in the pamphlet to indicate what division of the staff issued it. There is language in the pamphlet to indicate that it has a decidedly unofficial character. Thus, the Seventh Circuit has held, "These forms, however, are merely samples 'solely for purposes of demonstration' as the disclaimer at the bottom of the form states. . . . Reliance on such a form, where it

---

**3.** This statement contradicts the Fifth Circuit's conclusion in *Pollock* respecting staff opinion letters.

is contrary to the law of the jurisdiction, is not sufficient to insulate defendants from liability under § 1640(f)." *Basham, supra,* at 924 n. 9.

Further evidence of the unofficial nature of the pamphlet may be found in two staff interpretations issued prior to the 1976 amendment. The first is F.R.B. Letter No. 829 (August 22, 1974), issued by Jerauld C. Kluckman, Chief of the Truth in Lending Section. The letter states,

As the disclaimer following Exhibit E notes, the forms in the Board's publication are not necessarily definitive or accurate for every credit transaction; and it would not be, in staff's opinion, a bona fide error to rely on the description of a hypothetical security interest in an example when drawing up forms which should accurately describe a security interest to be taken in another transaction.

This letter was widely read to hold that the 10 day limitation of U.C.C. § 9–204 must be disclosed. On January 14, 1976, another letter was issued by Mr. Kluckman, then the Assistant Director of the Office of Saver and Consumer Affairs. This letter modified letter 829 to state that it would be sufficient merely to state that a security interest has been taken in after-acquired property. But the following caveat was added:

It must be emphasized, however, that staff's position on this issue rests not on Exhibit E of the pamphlet, but on Regulation Z itself. As we indicated in Letter 829, we do not believe that a creditor can automatically comply with the regulation by using a sample form, without regard to whether the terms of the creditor's own plan coincide with those described in the form.

It was the staff's opinion that reliance on the pamphlet would be unfounded in drafting a form. Regulation Z itself must be looked to. Since the Fifth Circuit has held that Regulation Z requires disclosure of the 10 day limitation, the pamphlet provides no protection. However, the two letters were issued prior to the 1976 version of § 1640(f). They cannot be said to be interpretations of

that section, but they do indicate the staff's opinion of the definitiveness and official character of the pamphlet.

The defendant relies on *Charles v. Krauss Co.,* 572 F.2d 544 (5th Cir. 1978). The defendant contends that in deciding a case which arose prior to the passage of the 1976 amendment the Fifth Circuit allowed the defendant to prevail on a good faith defense based on reliance on staff interpretations. Prior to the 1976 amendment staff interpretations could not be the basis of a good faith defense. Thus, the defendant reasons, the Fifth Circuit has implicitly adopted the dictum in *Pollock* in a direct holding.

A close reading of the last paragraph of the opinion indicates that the defendant has misconstrued the Fifth Circuit's reasoning:

The defendant here reasonably construed the exception in section 226.801 to include the contract that it prepared for the plaintiff. Our decision, following the Federal Reserve Board staff's understanding of section 226.801, limits the scope of that exception more narrowly and excludes the contract in question here. But our decision—which in effect limits the scope of section 226.801 exception in order to preserve it—amounts to a judicial determination that the exception's literal terms are invalid where read too broadly. The defendant, in relying on those literal terms, now has a good-faith defense under TILA section 1640(f) against the subsequent judicial determination.

572 F.2d at 549. The interpretation which the Fifth Circuit allowed the defendant to rely on was § 226.801 of Regulation Z. The staff interpretations involved were used by the Fifth Circuit to construe that interpretation to mean something other than its literal terms. However, the defendant relied on the literal terms. This reliance was allowed. Under the *Ives* case, an interpretation issued by the board included in Regulation Z, such as § 226.801, is an allowable basis for a good-faith defense under the original version of § 1640(f). Thus, the 1976 amendment is not involved in this decision.

Defendant also claims reliance on a leaflet issued by the Credit Union National Association in 1969. There is evidence that members of the board's staff participated in the compilation of the leaflet and that it "was reviewed by the Federal Reserve and praised highly." It is unclear whether this reference was to the Federal Reserve Board itself or to its staff. Under *Ives* an informal approval by the board is inadequate for reliance. Approval by the staff would be inadequate for the reasons already referred to and for the additional reason that Regulation Z § 226.1(d) prohibits approval of forms by the staff.

## V. CONCLUSION.

The plaintiff class is entitled to prevail. The claim of the individual plaintiff, James P. Jacklitch, will be dismissed. A hearing will be held before the Court to determine the measure of damages and attorney's fees in that no jury demand has been made.

