**Melvin McGOWAN, Plaintiff-Appellant,**

v.

**KING, INCORPORATED,**
**Defendant-Appellee.**

No. 76–2072.

United States Court of Appeals,
Fifth Circuit.

March 15, 1978.

substantial evidence test, the evidence of their effectiveness in this record falls far short of being overwhelming.

John L. Walker, Jackson, Miss., for plaintiff-appellant.

Pat H. Scanlon, Jackson, Miss., for defendant-appellee.

Before WISDOM, GODBOLD, and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Once again, despite proper and reasonable efforts to comply, an installment sale creditor falls victim to the complex disclosure requirements of the Truth in Lending Act, 15 U.S.C.A. § 1601 *et seq.*, and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.1 *et seq.* (hereinafter the Act and Regulation Z).

In August 1973 plaintiff Melvin McGowan purchased $107.86 worth of clothing from defendant King, Inc. (King), a retail store in Jackson, Mississippi. McGowan made a down payment of $3.52 and executed a retail installment contract and security agreement with a detachable disclosure statement.[1] King had obtained the form for this contract and disclosure statement from Tower Loan Brokers of Mississippi, Inc., who regularly financed King's installment sales; Tower in turn had requested a law firm to prepare the form in accordance with the truth in lending laws.

McGowan filed this suit in May 1974 pursuant to 15 U.S.C.A. § 1640(e)[2] alleging general violations of the Act and Regulation Z. In response to King's interrogatories, McGowan asserted that the disclosure statement violated Regulation Z for the fol-

---

1. McGowan obligated himself to pay $417.36, which consisted of a $195.66 outstanding old balance, the $104.34 unpaid balance of the new purchase, an $8.35 credit life insurance premium, and a $109.01 finance charge, in 24 monthly installments of $17.39. The disclosure statement read as follows:

DISCLOSURE STATEMENT

Date: _____ 8–11–73 _____

| | | | | |
|---|---|---|---|---|
| 1. | Cash Price (Inc. tax) | $107.86 | 6. Amount financed | $308.35 |
| 2. | Less (a) Cash down payment | $ 3.52 | 7. FINANCE CHARGE | $109.01 |
| | (b) Trade-in | $ –0– | | |
| | | | 8. Total of payments | $417.36 |
| 3. | Unpaid balance of cash price | $104.34 | | |
| | | | 9. ANNUAL PERCENTAGE RATE | 31.25% |
| 4. | Old balance remaining | $195.66 | | |
| 5. | Other charges: | $ 8.35 | /s/ King, Inc. | |
| | | | Seller | |
| | | $ | /s/ Melvin McGowan | |
| | | | Buyer | |
| | | | Buyer | |

---

2. 15 U.S.C.A. § 1640(e) gives the United States district courts jurisdiction to enforce the civil liability provisions of § 1640. 15 U.S.C.A. § 1640(a) provides that if a creditor fails to comply with any requirement of the Act with respect to any person, the creditor is liable to that person in an amount equal to the sum of (1) any actual damage sustained by that person, (2) twice the amount of the finance charge in connection with the transaction, or not less than $100 nor more than $1,000, and (3) the costs of the action and a reasonable attorney's fee.

lowing reasons: (1) it failed to itemize "other charges" as required by 12 C.F.R. § 226.-8(c)(4); (2) it failed to disclose and use the term "unpaid balance" as required by 12 C.F.R. § 226.8(c)(5); and (3) it used a confusing "Rebate for Payment in Full" paragraph. Later, in a supplemental answer to King's interrogatories, McGowan contended that the failure to disclose and use the term "deferred payment price" violated 12 C.F.R. § 226.8(c)(8)(ii). Following trial, the district court dismissed McGowan's complaint with prejudice on the basis that King had made the disclosures required by the Act. The court concluded that the terminology prescribed by Regulation Z is illustrative rather than mandatory, and the court suggested that in any event King's reliance on skilled and competent attorneys to prepare the forms would constitute a good faith defense under 15 U.S.C.A. § 1640(c).[3]

In this appeal McGowan contends that the district court erred in not finding that the failure to disclose the "unpaid balance" and "deferred payment price" and the failure to itemize "other charges" violated the Act and Regulation Z.[4] We agree that the failure to disclose the "deferred payment price" is a violation of Regulation Z to which no statutory defense available to King would apply, and therefore we reverse. Since this single violation is sufficient to impose the § 1640(a) liability, *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 376 n. 41, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973); *see Walker v. College Toyota, Inc.,* 519 F.2d 447 (4th Cir. 1975), we need not and do not consider the remaining contentions.

■ 12 C.F.R. § 226.6(a) mandates that "The disclosures required to be given by this part shall be made . . . in the terminology prescribed in applicable sections." In this credit sale transaction, 12 C.F.R. § 226.8(c)(8)(ii) requires disclosure of the sum of the cash price, other charges, and finance charge, using the term "deferred payment price." The disclosure statement used by King nowhere contains an entry for the "deferred payment price." See note 1 *supra.* Because of this omission, King violated Regulation Z.

King argues that the installment sale contract itself makes the required disclosure since it has an entry showing the "total deferred payment price" as $417.36. This argument must fail for two reasons. First, disclosures cannot be made piecemeal throughout the document. In Regulation Z the Federal Reserve Board has required that they must be made "clearly, conspicuously, [and] in meaningful sequence," 12 C.F.R. § 226.6(a), and that all the disclosures must be made together. 12 C.F.R. § 226.8(a). Second, the Regulation Z "deferred payment price" for this transaction, assuming the outstanding old balance is properly included in this computation, would be $420.88 rather than $417.36. Under 12 C.F.R. § 226.8(c)(8)(ii) the entire cash price rather than the cash price minus the down payment is to be included in the computation.

■ We also reject King's contention that the consumer must be misled before he is entitled to enforce the liability provided by § 1640(a). The scheme of the statute is to create a system of private attorneys general to aid its enforcement, and its language should be construed liberally in light of its remedial purpose. *Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d 740, 748 (5th Cir. 1973), *citing Ratner v. Chemical*

---

**3.** Section 1640(c) provides:

A creditor may not be held liable in any action brought under this section for a violation of this part if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

**4.** In addition, McGowan alleges several violations that he did not raise below. Since these matters were not considered by the district court, they will not be considered on appeal.

*Bank New York Trust Co.,* 329 F.Supp. 270 (S.D.N.Y.1971). The basis of § 1640(a) liability is the failure to disclose information required to be disclosed; there is no requirement that the plaintiff himself be deceived in order to sue in the public interest. 329 F.Supp. at 280; *see White v. Arlen Realty & Development Corp.,* 540 F.2d 645 (4th Cir. 1975). Unless some defense to King's violation of Regulation Z is applicable, the court must award McGowan the statutory penalty. *Grant v. Imperial Motors,* 539 F.2d 506, 510–11 (5th Cir. 1976).

King attempts to avoid liability on the basis that the Federal Reserve Board exceeded its statutory authority in enacting 12 C.F.R. § 226.8(c)(8)(ii). King argues that the Act itself does not require the disclosure of the "deferred payment price" concept,[5] nor does it authorize the Board to mandate the use of technical terms not set forth in the Act.[6]

The statutory authority for Regulation Z is found at 15 U.S.C.A. § 1604:

> The Board shall prescribe regulations to carry out the purposes of this subchapter. These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

One of the "purposes of this subchapter" is "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C.A. § 1601(a). This court has recognized that standardization of terms is a requisite if consumers are to be able to make meaningful comparisons of available credit alterna-

tives. *Pennino v. Morris Kirschman & Co.,* 526 F.2d 367, 370 (5th Cir. 1976).

▮▮▮▮ The provisions of Regulation Z mandating the use of specific terminology are within the scope of the Board's broad authority to enhance informed credit usage. That Congress did not specify the "deferred payment price" concept in 15 U.S.C.A. § 1638(a) does not invalidate the regulation requiring its disclosure. This disclosure requirement is not inconsistent with the statutory scheme, and to limit the Board's authority to require only those disclosures which Congress has expressed "would undermine the flexibility sought in vesting broad rule-making authority in an administrative agency." *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 372, 93 S.Ct. 1652, 1662, 36 L.Ed.2d 318 (1973) (upholding the "Four Installment Rule" portion of Regulation Z against an attack that the Board had exceeded its authority). Disclosure of the "deferred payment price" is reasonably related to the goal of the Act, and the Board was within its statutory authority in mandating such disclosure.

▮▮▮▮ King next argues that even if it did violate Regulation Z, its good faith attempt to comply with the law by relying on counsel in drafting its contract and disclosure forms brings it within the unintentional, bona fide error defense of 15 U.S.C.A. § 1640(c). See note 3 *supra.* King misconceives the nature of this defense. Section 1640(c) does not excuse unintentional violations that result from mistaken legal conclusions concerning the requirements of the Act and Regulation Z; rather, the defense is only available for clerical errors which occur despite a system for correcting them. *Ives v. W. T. Grant Co.,* 522 F.2d 749 (2d Cir. 1975); *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir. 1974); *Palmer v. Wilson,* 502 F.2d 860 (9th Cir. 1974); *see Turner v. Firestone Tire & Rub-*

---

5. 15 U.S.C.A. § 1638(a), the provision of the Act listing the required disclosures in credit sale transactions that 12 C.F.R. § 226.8(b) & (c) implements, nowhere mentions the phrase "deferred payment price."

6. For support King points to 15 U.S.C.A. § 1632(a), which states that "Regulations of the Board . . . *may permit* the use of terminology *different* from that employed in this part . . . ." (emphasis added). The statute does not say that the Regulations may *require* the use of different terminology.

*ber Co.*, 537 F.2d 1296 (5th Cir. 1976) (referring to § 1640(c) as the "clerical error defense"). We expressly refuse to follow *Welmaker v. W. T. Grant Co.*, 365 F.Supp. 531 (N.D.Ga.1972), which held to the contrary. The omission of the "deferred payment price" from King's standard disclosure form was not the result of a clerical error, so § 1640(c) is inapplicable.

Nor can King benefit from the 15 U.S. C.A. § 1640(f) defense with respect to its failure to disclose the "deferred payment price." Section 1640(f) gives a defense for good faith compliance with any rule, regulation, or interpretation thereof by the Federal Reserve Board. The attorneys who prepared the form that King used relied extensively on the Federal Reserve Board's 1969 pamphlet entitled "What You Ought to Know About Federal Reserve Regulation Z." The model form in that pamphlet contained an entry "deferred payment price," however, so the drafting attorneys could not have relied on that pamphlet in omitting such an entry in the form used by King.

Since 12 C.F.R. § 226.8(c)(8)(ii) is within the scope of the Board's statutory authority and since King has no valid defense to its failure to comply with the regulation, McGowan is entitled to recover the § 1640(a)(2) civil penalty of twice the amount of the finance charge, or $218.02. In addition, McGowan is entitled to the costs of the action and a reasonable attorney's fee as determined by the district court. 15 U.S.C.A. § 1640(a)(3). The amount of the fee should be determined in accordance with the principles set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and the fee should also include a reasonable amount for services rendered on appeal. *Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d 740, 748 (5th Cir. 1973). Finally, that we have chosen to address only one of McGowan's contentions in reversing should play no role in the determination of the fee to which he is entitled. The congressional policy of encouraging private litigants to aid in the enforcement of the Act dictates that McGowan be awarded the full amount of a reasonable fee for his attorney's services in connection with this case. *See McGowan v. Credit Center of North Jackson, Inc.*, 546 F.2d 73, 77 (5th Cir. 1977).

REVERSED and REMANDED.