**Esther CHARLES, Plaintiff-Appellant,**

v.

**KRAUSS COMPANY, LIMITED, Defendant-Appellee.**

No. 76–3135.

United States Court of Appeals, Fifth Circuit.

May 5, 1978.

Rehearing and Rehearing En Banc Denied June 15, 1978.

Joseph W. Thomas, New Orleans, La., for plaintiff-appellant.

David J. Conroy, James K. Irvin, New Orleans, La., for defendant-appellee.

Before MORGAN and GEE, Circuit Judges, and KING *, District Judge.

GEE, Circuit Judge:

The Truth-in-Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., obligates those who extend consumer credit to provide consumers with a meaningful, nontechnical disclosure of the terms of the credit extension. But although the statute aims at simplicity, its execution has required that the Federal

* Of the Southern District of Florida, sitting by designation.

Reserve Board, the agency responsible for administering the Act, give highly detailed and technical directives to creditors as to the form and content of the obligatory disclosure statements. The present case involves one of these technical directives and involves as well the creditor's statutory defense of good-faith compliance with existing rules, regulations and interpretations.

In its Regulation Z to the TILA, the Federal Reserve Board has required, among other things, that the creditor's disclosure statement be made on only one side of the page—either on the page that itself evidences the consumer's obligation or on one side of a separate statement. 12 C.F.R. § 226.8(a).[1] The Federal Reserve Board has made certain exceptions to this requirement, and the reach of these exceptions forms a major part of the present dispute.

On December 11, 1975, the plaintiff, Mrs. Esther Charles, purchased a few items of furniture and a quantity of vinyl material from the defendant Krauss Company for a total price of $184.39. She made this purchase through a retail installment contract. Such an installment contract is subject to the TILA's disclosure requirements, and Krauss did make the required disclosures, incorporating them into a simple document including the sales contract itself. And here is the fatal flaw: the disclosures in this document were on both sides of a single 8½ by 11-inch sheet of paper.

▉▉▉ The document's failure to meet the one-sided requirement of section 226.-8(a) was unearthed by Mrs. Charles' attorney when she approached him on what seems to have been a separate matter. There is no question that Mrs. Charles was in any way confused or misled by the Krauss disclosure statement, nor indeed does there appear to be any other problem based on the contract itself. It is well established, however, that liability under the TILA does not hinge upon such facts. Because this Act is read as a prophylactic measure, the basis of liability is rather "failure to disclose information required to be disclosed; there is no requirement that the plaintiff himself be deceived in order to sue in the public interest." *McGowan v. King, Inc.*, 569 F.2d 845, 848 (5th Cir. 1978), and cases cited therein. Moreover, liability flows from even minute deviations from the requirements of the statute and of Regulation Z. The statute aims to assure a meaningful disclosure of credit terms so that consumers may shop comparatively for credit, *Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d 740 (5th Cir. 1973), 15 U.S.C. § 1601; this goal requires that even minor statutory and regulatory strictures be followed by all creditors in detail. *See Pennino v. Morris Kirschman & Co., Inc.*, 526 F.2d 367 (5th Cir. 1976). Thus, we have said that "once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability," *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976), unless, of course, the creditor is excused by an applicable statutory defense.

Mrs. Charles brought this action on the basis of the Krauss contract's failure to meet the one-side requirement of section 226.8(a).[2] After presentation of discovery materials and a hearing, the trial court granted summary judgment for the defendant and denied summary judgment to the plaintiff, relying on a Board Interpretation of the regulation in 12 C.F.R. § 226.801. From this ruling the plaintiff appeals, arguing that the Interpretation § 226.801 neither excuses defendant from the one-side requirement nor provides defendant with a defense of good-faith compliance.

The Interpretation in question reads as follows:

> consists of a single type of charge. 12 C.F.R. § 226.820. This court has settled the issue against itemization of a single charge in *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511 (5th Cir. 1976); in the loan context, *see Liner v. Aetna Finance Co.*, 555 F.2d 1241 (5th Cir. 1977). Plaintiff does not raise the issue on appeal.

---

1. This requirement does not apply to open-ended credit arrangements.

2. Her original complaint also charged that Krauss was required to itemize the finance charge, even though it consisted of a single item, the interest, and even though an official interpretation of the Federal Reserve Board has excused itemization where the finance charge

**§ 226.801** Location of disclosures when contract, security agreement, and evidence of transaction are combined in a single document.

(a) Some creditors incorporate the terms of a contract, a security agreement and evidence of a transaction in a single document. These documents are designed for processing by mechanical and electronic equipment. If all of the required disclosures under § 226.8 should be placed on the face of such a document, the creditor will be unable to utilize conventional accounting and record keeping equipment because of the size of the resulting document. The question arises as to whether required disclosures may be made on the face and the reverse side of such a document.

(b) Where a creditor elects to combine disclosures with the contract, security agreement, and evidence of a transaction in a single document, the disclosures required under § 226.8 shall, in accordance with § 226.6 be made on the face of that document, on its reverse side, or on both sides: *Provided,* That the amount of the finance charge and the annual percentage rate shall appear on the face of the document, and, if the reverse side is used, the printing on both sides of the document shall be equally clear and conspicuous, both sides shall contain the statement, "NOTICE: See other side for important information," and the place for the customer's signature shall be provided following the full content of the document. (original emphasis)

Plaintiff argues first that the Krauss document does not incorporate the contract and disclosures in a single document. This contention is without merit. The document on its face incorporates the disclosure statements into the installment sales contract.[3]

More serious is the plaintiff's second argument, to the effect that the exception applies only where the contract form in question is designed for mechanical or electronic processing. The Krauss Company, however, makes two replies. First, it notes that the only operative language of the interpretation is in paragraph (b), which says nothing about the process design. Thus, on the Krauss reading, the difficulties of mechanical and electronic processing only state a motivation for the exception to the one-side rule but do not limit its application. Thus, on this view the exception applies to all contract forms that combine disclosures with the basic contract; as Krauss points out, it is a matter of complete indifference to consumers whether or not the contract forms they sign are designed for further electronic or mechanical processing. As a second reply, the Krauss Company says that even given a mechanical processing limitation, their own forms meet the test, since their single-sheet contracts were "designed" for easy retrieval from the company's 8½ by 11-inch file cabinet drawers.

■ While we think that both these arguments of the defendant carry some force, we cannot agree. As to the first point, three Federal Reserve Board staff opinion letters, in discussing the applicability of the exemption under section 226.801, have stated that this exemption applies only to documents designed for electronic or mechanical processing. Letter of July 31, 1974, No. 825, excerpts in 5 CCH Consumer Credit Guide ¶ 31,147; Letter of March 19, 1976, No. 1016, excerpts in 5 CCH Consumer Credit Guide ¶ 31,356; Letter of February 10, 1977, No. 1154, excerpts in 5 CCH Consumer Credit Guide ¶ 31,536. This court is, of course, not bound by staff opinion letters and will under some circumstances conclude

---

**3.** While the language of § 226.801(b) could be read to apply only to documents that include a security agreement, the Federal Reserve Board staff has not so interpreted this language and has applied the exception where "the contract, security agreement (*if any*), and evidence of the transaction are combined into a single document . . . ." (Emphasis added.) F.R.B.

Letter of February 10, 1977, No. 1154, excerpts in 5 CCH Consumer Credit Guide ¶ 31,536. Since plaintiff does not urge that § 226.801 applies only where a security agreement is present along with other elements of the contract, we see no reason to disturb the Board staff's understanding of its own interpretation.

that such a letter should not control the court's determination of the meaning of a statute or regulation. *Pollack v. General Finance Corp.*, 552 F.2d 1142 (5th Cir. 1977). Nevertheless, the TILA gives important interpretive and enforcement duties to the Federal Reserve Board, and for this reason we have accorded the Board's constructions great deference in this highly technical field. *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir. 1974). Staff opinion letters, while less authoritative than formal Board regulations and interpretations, are entitled to be weighed carefully, since they are often forerunners of these official Board interpretations and regulations; and indeed they may be especially valuable as guides to the Board's understanding of its own regulations or interpretations, as opposed to its understanding of the meaning of the underlying congressional statute. *See St. Germain v. Bank of Hawaii*, 413 F.Supp. 587 (D.Hawaii 1976). Thus, where, as here, the staff opinion letters do not conflict with each other and where they state a reasonable conclusion consistent with the plain meaning of the Board's official regulations or formal interpretations, they are entitled to great deference.

 In the present instance we would have considerable doubt about the procedural correctness of Interpretation § 226.-801 were it not for the gloss placed upon this Interpretation by the staff opinion letters. This Interpretation is not deemed a regulation, and hence it was not adopted in accordance with the notice and comment requirements for rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553. Yet the Interpretation would permit certain consumer credit contracts to spread disclosures over two pages of each contract document. Thus, if its scope were not limited to a relatively narrow segment of the consumer credit market, we think it would go far to overturn the one-side requirement stated in Regulation § 226.8(a). Indeed, plaintiff argues that the Interpretation is in fact an improper amendment to Regulation Z, adopted without compliance with the requirements of the Administrative Procedure Act. We note, too, that without limi-

tation this interpretation could invite a partial return to complex contractual forms and scattered disclosures, with the possible concomitant of intentional concealment on the part of some unscrupulous creditors. Our opinions have stressed that, for the sake of comparative credit shopping, the consumer should be able to look in one place for the required disclosures. *Myers-Dickson, supra.* The one-side requirement speaks to this consideration, and while some relatively narrow variances may be permitted where motivated by legitimate concerns—concerns that themselves have nothing to do with policies toward disclosure or concealment—we think that such variances must be limited in scope lest they swallow the one-side rule of section 226.8(a). The limitation to contract forms designed for electronic or mechanical processing is appropriate and, we think, perhaps necessary to save the Interpretation itself.

For similar reasons, we decline to regard the defendant's file drawers as devices for mechanical processing under the Interpretation. The Board opinion letter most directly on point, that of March 19, 1976, declines to give a precise definition to documents designed for electronic or mechanical processing, but its references to computer printouts and "future advances" in record-keeping technology lead us to believe that the opinion letter intended to limit the § 226.801 exception to processes more sophisticated than simple file cabinets. Just as important, if "electronic or mechanical processing" equipment included equipment so simple and widespread as file cabinets, the Interpretation's exception would come close to swallowing Regulation Z's one-side rule; and we have great doubts about whether this interpretation could be applied without compliance with the rulemaking requirements of the Administrative Procedure Act.

So long as the section 226.801 exception is limited to electronic and mechanical equipment as set out in the staff opinion letters, we think this Interpretation is sufficiently circumscribed that it need not be treated as a substantive change in the one-side rule of

Regulation Z. See *Liner, supra; Continental Oil Co. v. Burns*, 317 F.Supp. 194 (D.Del. 1970).

 This means, however, that defendant's contract did not meet the requirements of the section 226.801 exception thus limited and presents the further question whether the defendant may be excused under 15 U.S.C. § 1640(f). This is an amendment to the TILA providing that no liability may be imposed under the Act for acts done or omitted in good faith conformity with any Board rule, regulation, or interpretation or Board employee approval "notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be *invalid for any reason*." Plaintiff argues that defendant cannot take advantage of this statutory saving clause since the defendant's contract was not actually in conformity with the Board Interpretation § 226.801. We disagree. Plaintiff's reading of the statutory clause is overly restrictive and does not well comport with the equitable defense that this statutory amendment was intended to provide. The Krauss Company's contract did comply with the literal language of the only directive clause in section 226.801; the company could reasonably have understood this Interpretation to apply to all combination contracts (not just to those designed for mechanical or electronic processing), or, alternatively, it could have reasonably believed its own filing system to come within the scope of a mechanical processing device. It is true that the contract in question was written after one of the three staff opinion letters referred to above, that of July 31, 1974, in which the staff indicated that the section 226.801 exception applied only to contract forms designed for electronic and mechanical processing. However, this opinion letter, unlike the later latter of March 19, 1976, was in fact written in answer to a question on a different point (the place for

the customer's signature); moreover, the letter did not specify in any detail what was meant by mechanical processing. In addition, we note that our own deference to staff opinion letters does not settle the issue of the degree to which ordinary citizens are bound by these letters. Although courts may rely heavily on such letters in settling the judicial interpretation of administrative rules, these letters in themselves—unlike formally adopted regulations—do not have the force of law.[4] Nor are they published in the Federal Register or any other official compilation. Finally, even though the courts may defer to a staff opinion letter, they may in some circumstances reject the letter's interpretation, *see, e.g., Pollack, supra* ; and a member of the public cannot know in advance whether the courts will in fact defer to an opinion letter. As the Second Circuit pointed out in *Ives v. W. T. Grant Co.*, 522 F.2d 749, 758 (2d Cir. 1975), the congressional drafters of the good-faith defense amendment stated that they did not believe that " 'a creditor should be forced to choose between the Board's construction of the Act and the creditor's own assessment of how a court may interpret the Act.' "

 The defendant here reasonably construed the exception in section 226.801 to include the contract that it prepared for the plaintiff. Our decision, following the Federal Reserve Board staff's understanding of section 226.801, limits the scope of that exception more narrowly and excludes the contract in question here. But our decision—which in effect limits the scope of the section 226.801 exception in order to preserve it—amounts to a judicial determination that the exception's literal terms are invalid where read too broadly. The defendant, in relying on those literal terms, now has a good-faith defense under TILA section 1640(f) against this subsequent judicial determination. The district court so ruled, and we AFFIRM.

---

**4.** Indeed, until a 1976 amendment to § 1640(f), a creditor's reliance on a staff approval could not establish a good-faith defense under TILA

§ 1640(f). *Jones v. Community Loan & Investment Corp.*, 544 F.2d 1228 (5th Cir. 1976).