Lois OWENS, A/K/A Lois Williams and
Betty J. Maddock

v.

MAGEE FINANCE SERVICE OF
BOGALUSA, INC.

Civ. A. No. 77–3151.

United States District Court,
E. D. Louisiana.

Aug. 13, 1979.

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court for trial on June 7, 1979, and was thereafter taken under submission pending the filing of post-trial briefs by the parties. Having received the post-trial submissions and having carefully considered the written and oral arguments of counsel, the record, and the applicable law, the Court rules as follows:

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the following conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

Plaintiffs, Lois Owens, a/k/a Lois Williams ("Owens"), and Betty J. Maddock ("Maddock"), who are natural persons of the age of majority and residents of the City of Bogalusa in Washington Parish, Louisiana, have brought this action for Truth-in-Lending violations and an Equal Credit Opportunity violation arising out of consumer credit transactions with defendant, Magee Finance Service of Bogalusa, Inc. ("Magee"), a Louisiana corporation doing business in Bogalusa, Louisiana. Magee, in the ordinary course of its business, regularly extends consumer credit, or offers to extend such credit, which is payable by agreement in more than four installments and for which the payment of a finance charge is required in connection with loans. Plaintiffs claim damages based on three consumer credit transactions with Magee.

On October 21, 1976 Owens applied for a direct loan of approximately $650.00 with Magee ("Transaction # 1"), the proceeds of which she intended to, and ultimately did, use to pay personal and family bills. Magee, however, would not approve Owens's application unless she could provide a creditworthy indorser. Thus, in order to obtain the credit, Owens had her sister, Betty Maddock, who had previously done business with Magee and who was considered by Magee as creditworthy, serve as co-signer and indorser, and on that same day Maddock signed the loan papers.

On May 27, 1977 Maddock applied for a direct loan of approximately $925.00 with Magee ("Transaction # 2"), the proceeds of which she intended to, and ultimately did, use to pay personal and family bills and obligations.

On July 13, 1978 Maddock again applied for a direct loan with Magee of approximately $400.00 ("Transaction # 3"), the proceeds of which she promptly needed, and ultimately used, for repairs to her disabled family car. Also, on July 13, 1978 Maddock telephoned Magee's office and spoke with Mr. Lloyd Ball, the co-manager, with authority to bind Magee, up to $2,500.00, to

make the oral application for the loan. Mr. Ball requested that she come to the office to complete the transaction, and allegedly, prior to her actually receiving credit, she was requested to execute a document to release her pending Truth-in-Lending claims against Magee which she and Owens had filed in connection with Transaction # 1.

All of the insurance policies issued in connection with these three consumer credit transactions carried Magee as the "First Beneficiary," or loss payee, whereby Magee would receive the proceeds thereof in case of death, disability, and/or casualty; additionally, in the regular and ordinary course of its business, and in these present transactions Magee applied any rebates and/or unearned premiums as a result of these insurance policies to the respective customer's account in the event of prepayment, loss, and/or casualty.

Plaintiffs' Truth-in-Lending claims with respect to the three transactions are as follows:

1. Failure to disclose all of the required disclosures early, conspicuously, and in a meaningful sequence and, in the case of required numerical amounts and percentages, in not less than the required 10-point printed type prescribed by 12 C.F.R. § 226.-6(a), i. e., defendant failed to disclose required numerical amounts and percentages in the disclosure statement text located between the "insurance authorization" portion and the "security" portion in not less than 10-point printed type (Transactions #'s 1, 2, 3); Magee also failed to disclose the term "FINANCE CHARGES" and "ANNUAL PERCENTAGE RATE" (Transactions #'s 1, 2) or "TOTAL FINANCE CHARGE" and "ANNUAL PERCENTAGE RATE" (Transaction # 3) more conspicuously than other terminology required by the Act and Regulation "Z" and failed to disclose clearly and conspicuously the due dates of payments subsequent to the first payment's due date (Transactions #'s 1, 2, 3).

2. Failure to disclose all "security interest(s)" retained by Magee in connection with the proceeds and/or unearned premi-ums of the insurance coverages issued in connection with the transactions, together with a clear and otherwise proper description of all properties, monies, policies, and/or proceeds covered, see, 12 C.F.R. § 226.8(b)(5); (Transactions #'s 1, 2, 3).

3. Failure to comply with 12 C.F.R. § 226.8(b)(5) in omitting the identification of the "One Living Room Suite and One Television" on the disclosure statement itself since the length of identification of these properties did not require reference to and use of the chattel mortgage document itself for this purpose; (Transaction # 2).

4. Failure to disclose the correct amount of the "amount financed," see 12 C.F.R. § 226.8(d)(1), i. e., the "amount of loan" indicated in the underlying promissory note contravenes this disclosure; (Transactions #'s 1, 2, 3).

5. If this loan was a pre-computed loan, Magee failed to disclose the correct finance charge as required by 12 C.F.R. § 226.-8(d)(3) computed at the annual percentage on an "amount of loan" stated in the note, and failure to use the required terminology for disclosure of the "Finance Charge," i. e., the plural of this term, "Finance Charges," (Transactions #'s 1, 2) and "TOTAL FINANCE CHARGE" (Transaction # 3) is not sanctioned by Regulation "Z."

6. If this loan was an interest-bearing loan, Magee falsely disclosed the fact that it had a right to charge a default charge of 5% of the unpaid amount of the installment but not exceeding $5.00 or the deferral charge that would be permitted to defer an unpaid installment, see 12 C.F.R. § 226.-8(b)(4) or that a certain rebate will be made if prepaid, see id., or that a certain rebate will be made if prepaid, see 12 C.F.R. § 226.8(b)(7) (Transactions #'s 1, 2, 3).

7. Disclosing a false and incorrect statement of the annual percentage rate, since the note signed by plaintiffs evidencing this obligation provides that "if this consumer loan is written on an interest bearing basis it shall bear interest at the annual percentage rate stated above . . ." when, in fact, no annual percentage was stated above, (Transactions #'s 1, 2, 3).

8. Disclosing an incorrect annual percentage rate by more than one-quarter of one percent (¼%), since the note evidencing this obligation states that "if this loan is precomputed it shall bear interest after contractural maturity at the highest rate authorized by the Louisiana Consumer Credit Law" (*i. e.* 36%), when in fact, an annual percentage rate in excess of 36% was disclosed by defendant, (Transaction # 1).

9. Failure properly to disclose the additional "security interest(s)" Magee retained in connection with the waiver of homestead rights and/or exemptions contained in the accompanying Chattel Mortgage documents, (Transactions # 's 1, 2, 3).[1]

Moreover, plaintiff Maddock asserts a claim under the prohibited discrimination sections of the Federal Equal Credit Opportunity Act for alleged violations by Magee in connection with the circumstances circumscribing and including the transaction of July 13, 1978 and the accompanying "settlement" document executed by Maddock, claiming actual and punitive damages up to the maximum of $10,000.00, and attorney fees should the Court find that Magee did engage in prohibited discrimination under the Federal Equal Credit Opportunity Act, and requesting that the Court invoke its equitable powers and invalidate and declare as null and void the "release and compromise" document signed by plaintiff Maddock with respect to her claims for Transaction # 1.

The disclosure statements that were executed are as follows: Transaction # 1 (Exhibit P–2); Transaction # 2 (Exhibit P–10); Transaction # 3 (Exhibit P–20). Moreover, it was stipulated that the typeface on the lower third portion of Magee's forms with respect to "FINANCE CHARGE" was 8 point type.

The testimony of Mr. Lloyd Ball, ("Ball") Magee's manager, Mrs. Maddock, and Barbara Thomas, ("Thomas") secretary in Magee's office, is relevant to determine whether Maddock released her rights by the execution of the settlement and release document (Exhibit P–28) and whether Magee engaged in discriminatory practices under the Equal Credit Opportunity Act with respect to the settlement document and the consummation of Transaction # 3. Mr. Ball testified that Maddock, who was considered by him to be creditworthy and a good customer as demonstrated by her credit history at Magee, was known by Magee to have filed a lawsuit on her Truth-in-Lending claims for Transactions # 's 1 and 2, even though the Magee personnel had not seen anything in writing and their records did not reflect a pending suit. Ball testified that after Maddock called to negotiate Transaction # 3 over the telephone, that the loan papers were prepared, Maddock came into the office on July 13, 1978, signed the document while sitting in the cubicle that Magee maintains for effecting credit transactions, and that she voluntarily, after a conversation with Ball about the pending claims, offered to release her pending claims. He testified that he was going to ask her about the pending claims, did so, and then presented her with a release for her to execute, the draft copy of which was entered into evidence as Exhibit D–2. No monetary consideration was tendered by Magee for the execution of the release document, which Maddock, instead of signing the form presented to her by Ball, redrafted using her own language and the terminology from the company's form. Ball testified that he did not make the execution of the release a *quid pro quo* for the extension of credit for the already drafted and signed documents, although he did state to her that it was personally embarrassing for him to extend her credit with the pending lawsuits against Magee, but that the release of those lawsuits obviously was not a precondi-

---

1. At trial plaintiffs orally moved and then submitted a written motion to amend pleadings to conform to the evidence to assert further Truth-in-Lending violations. The Court denied plaintiffs' motion since it is of the opinion that such claims could have been asserted earlier and that asserting the claims at this date would prejudice defendant. Moreover, since only one violation need be proved for transaction to affect recovery, as will be discussed later, those amendments would not affect the outcome of this litigation.

tion of the loan. Moreover, he testified that the reason Magee did not tender any money to Maddock in exchange for the release is because Maddock stated she would not take any money since she regarded it as a "bribe."

Maddock's version of the events is different than Ball's recollection. Maddock, a supply clerk at Crown Zellerbach, had known Ball and had transacted business at Magee for many years. She along with her sister, had filed Truth-in-Lending claims against Magee. Her son had an accident in the family car, she needed money to repair the car, and called Magee's office in the morning. She spoke to Ball and told him of her need for $400.00. He then told her to come into Magee's office on her lunch hour. At about 11:40 A.M., she went to the office and Ball approached her and said that he wanted to talk about something first. He had a typed paper in his hand, laughed, and said something about wanting to clear up the suit that was pending. He asked her how it would look to his bosses if he were to extend her credit while the suit was pending. "You know how it is working for someone else." Maddock, after looking at the typed paper, then said that she could not release all claims since she could not release the claims that her sister had. Ball, upon Maddock's rising to leave to terminate all discussions, then asked her if she could give him something in writing, even if it was not on the form provided (since Maddock had objected to it as an attempt to release her sister's claim). Maddock then indicated that she would write her own and would take some of the words off of the copy provided. The document (Exhibit P–28) she hand-wrote on a Magee letterhead is as follows:

> "7–13–78
>
> I, Betty J. Maddock, attest to the fact that I have no claims of damages against Magee Finance concerning Loans made to me by this company. I hereby settle all claims on my personal notes made between me & Magee Finance.
>
> /s/ Mrs. Betty J. Maddock
> /s/ Lloyd Ball
> /s/ Barbara Thomas"

Maddock then was presented with the papers for Transaction # 3 and then left with the loan proceeds. Upon returning to work, she was upset and talked with her friend, Lil Coleman, about what had happened to her. She thought about calling her attorney to tell him what happened, but was too ashamed and embarrassed over what had happened. She testified that she was embarrassed while in Magee's office, was embarrassed around her friends, and that the event caused her anguish to be sitting in a "cubbyhole" with Ball cajoling her into signing a settlement document. *Maddock specifically testified that Ball had told her that she had to give something written for the loan to be approved.* She also testified that although she had seen Ball on a number of prior occasions, that this was the first time they had discussed her claims, but that he had at one time asked her to talk to her sister, to which Maddock had replied that she and her sister were not speaking.

As to Transaction # 1, she testified that she knew that her legal liability was contingent only upon her sister's failure to pay.

Barbara Thomas, a secretary in Magee's office, essentially verified Ball's version of the events that after Maddock called, the loan documents were prepared, that the checks are not prepared until after the loan papers are signed, that she presented the documents to Maddock to sign, Maddock signed them, that she, Thomas, went back to prepare the check, that then she heard Ball and Maddock talking about the lawsuits, saw her sign Exhibit P–28, that she witnessed the document, and that she did not find it strange that Maddock would sign such a paper after a loan transaction had been completed and in exchange for nothing (although she did corroborate the statement that Maddock regarded payment as a "bribe").

This Court is of the opinion that the story from the Magee point of view is implausible, that Betty Maddock, a woman who Magee knew at the time to be in need of emergency funds, would after signing the loan documents, release a lawsuit against

Magee merely on the grounds that she did not want friction to exist between her and the Magee personnel. Although such behavior might not be impossible, it would be unusual, and plaintiff Maddock has convinced this Court that the facts were as she related them to be, that is, Ball had indicated that a release would have to be executed prior to effecting the credit transaction. Maddock then tried to make the best of a bad situation and to preserve the rights of her sister, which she worried that she might have the power to release, by drafting her own document. It is difficult to imagine that Ball, who admitted preparing a typewritten settlement document, would wait until after the credit transaction had been consummated to present it to Maddock. Even if this Court had the predisposition to believe Ball's story after his initial testimony, the demeanor of Mrs. Thomas, who, from this Court's observation, seemed nervous and embarrassed to give a corroborating version of Ball's testimony, and who, when questioned responded in a guarded tone and with clipped statements, results in little weight and effect being accorded to her testimony. Moreover, in this Court's opinion, Mr. Ball's credibility was impinged by his statement regarding the size of the handwriting on the loan documents.[2]

This Court does not proceed in a vacuum and in recognizing human nature as it is, finds that the version offered by Maddock is the most logical and credible, and so finds that her testimony although the testimony of an interested party, is eminently believable in contrast to the chain of events testified to by others. Moreover, this Court finds that Mr. Ball's conduct was entirely intentional, premeditated, coercive, and unreasonable, and that Maddock suffered embarrassment and mental anguish as a result.

## CONCLUSIONS OF LAW

■ Plaintiffs' claims of Truth-in-Lending violations based on 15 U.S.C. §§ 1639(a),

1640(a); 26 C.F.R. § 226.1 *et seq.*, are federal questions conferring jurisdiction on this Court under 15 U.S.C. § 1640(e), since at all times in question plaintiffs were "customers" under the Act, 12 C.F.R. § 226.2(u); *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), defendant was a "creditor," 12 C.F.R. § 226.2(s) and the transactions in question were "consumer loans," 15 U.S.C. §§ 1602(h), 1603(1); 12 C.F.R. § 226.-2(p)–.3(a); *Sapenter v. Dreyco, Inc.,* 326 F.Supp. 871 (E.D.La.), *aff'd,* 450 F.2d 941 (5th Cir. 1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1970); *Gallegos v. Stokes,* 593 F.2d 372, 375 (10th Cir. 1979). Moreover, this Court has jurisdiction over plaintiff Maddock's claim based on the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(3), under 15 U.S.C. § 1691e(f).

## I. TRUTH–IN–LENDING LIABILITY

■ The purpose of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* ("Truth in Lending"), and Regulation "Z" promulgated pursuant to it, 26 C.F.R. § 226.1 *et seq.*, obligates those who extend consumer credit to provide customers with a meaningful, nontechnical disclosure of the terms of the consumer loan transaction. Thus, the civil liability section of the Act, 15 U.S.C. § 1640(a)(2), has been interpreted to provide that one violation, however slight, in a consumer credit transaction, gives rise to civil liability under the Act. As stated by the Fifth Circuit in *Grant v. Imperial Motors, Inc.,* 539 F.2d 506 (5th Cir. 1976):

> [O]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability . . . unless one of the defenses provided in the Act is applicable to this transaction, the Court must award the successful litigant-consumer the statutory penalty.

539 F.2d at 510. This view has recently been affirmed by a section of this district court:

---

**2.** Mr. Ball, when asked about the discrepancy in the ability of his to get the description of a longer sentence on one loan form and his ina-

bility on another (*See* exhibits P–2, P–10 and P–20), stated that one's handwriting is larger on some days than on others.

Not only must statutory damages be awarded where damage is *de minimis*, but such is also the case where, as here, there is no damage at all, for subsequent decisions (i. e. subsequent to the *Grant* decision) have held that in order to recover under the Truth in Lending Act there is *no* requirement that the plaintiff himself be deceived. *McGowan v. King, Inc.*, 569 F.2d 845 (5th Cir. 1978); *Charles v. Krauss Company, Ltd.*, 572 F.2d 544 (5th Cir. 1978), reh. den., 575 F.2d 881 (5th Cir. 1978). Thus, recovery of a statutory minimum is possible even where, as here, the plaintiff had full knowledge of those charges omitted from the required disclosure statement, and thus, no harm was done.

Because of the Court's disposition of a number of the claims plaintiffs have alleging Truth-in-Lending violations by Magee's disclosure statement, this Court is pretermitting consideration of all but several of the most technical and straightforward alleged violations of Truth-in-Lending common to all three transactions, i. e., (1) failure to use the word "Finance Charge;" (2) failure to use 10 point type, and (3) failure to disclose exact due date of each monthly payment.

### A. *FINANCE CHARGES AND TOTAL FINANCE CHARGES*

■ Plaintiffs contend that Magee's disclosure statement violated 12 C.F.R. § 226.-8(d)(3) which requires creditors to disclose "the total amount of the finance charge, with description of each amount included, using the term 'finance charge,'" since the statements in Transactions #'s 1 and 2 used the term "finance charge*s*" (emphasis added) and the statement in Transaction # 3 used the term, "total finance charge." This Court agrees and rejects the defendant's argument that the use of functionally equivalent terms that are not misleading or confusing is not a violation (citing *Bussey v. Georgia BankAmericard*, 516 F.2d 452 (5th Cir. 1975)) or, if it is a violation, it is a *de minimis* at best, and therefore not actionable (citing 15 U.S.C. § 1640). The Fifth Circuit has apparently authorized the finding of a violation under 12 C.F.R. § 226.-

8(d)(3) when the statutory language is not used. In finding a violation under 12 C.F.R. § 226.7(b)(9) when "Balance" was used instead of "new balance," the court wrote:

The requirements of § 226.7(b)(9) are quite technical but Congress did not intend creditors to escape liability where only technical violations were involved. As stated in *Powers v. Sims and Levin Realtors*, E.D.Va., 1975, 396 F.Supp. 12, 20 (failure to use the term "Finance Charge.")

Indeed, the technical requirements of the act must be strictly enforced if the goal of standardization of terms, which is a requisite if consumers are to be able to make meaningful comparisons of available credit alternatives, is to be achieved.

This Court agrees with the position taken in *Powers* and, therefore, we find that the defendant's failure to use the term "new balance" to be a violation of Regulation Z, § 226.7(b)(9). *Cf. Ives v. W. T. Grant Co.*, 2d Cir., 1975, 522 F.2d 749, 756–769 (failure to use the term "Unpaid Balance.")

*Pennino v. Morris Kirschman & Co., Inc.*, 526 F.2d 367, 370 (5th Cir. 1976). Thus, this Court finds that Magee's statements violate the technical requirements of § 226.8(d)(3), *cf. McGowan v. King, Inc.*, 569 F.2d 845 (5th Cir. 1978); ("total deferred payment price" instead of "deferred payment price" contravenes § 226.8(c)(8)(ii); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) ("total time balance" instead of "total of payments" contravenes § 226.8(b)(3)), even though it prefaced the section with the caption "Determination of Finance Charge."

### B. *FAILURE TO USE 10 POINT TYPE*

■ Plaintiffs further contend that the disclosure statements violated 12 C.F.R. § 226.6(a), which provides in part that:

Except with respect to the requirements of § 226.10 [on advertising credit terms], where the terms "finance charge" and "annual percentage rate" are required to

be used, they shall be printed more conspicuously than other terminology required by this part and all numerical amounts and percentages shall be stated in figures and shall be printed in not less than the equivalent of 10 point type, .075 inch computer type, or elite size typewritten numerals, or shall be legibly handwritten . . .,

since the terms "finance charges" and "total finance charge" and "annual percentage rate" were printed with 8 point type. This Court is of the opinion that the challenged terms in the disclosure statements, appearing on the lower third of defendant's form, are not statements or disclosures "required to be used," and thus, since although they were printed with 8 point type, were not in violation of § 226.6(a). *See Jones v. Goodyear Tire & Rubber Co.*, 442 F.Supp. 1157, 1161–62 (E.D.La.1977) (Rubin, J.):

The words "finance charge" appear five other times under the heading 'Retail Installment Sale and Security Agreement.' In three cases, the words are not part of the required disclosure, and, thus, not covered by Section 226.6(a).

Thus, it is only the "DETERMINATION OF FINANCE CHARGE" disclosure on the upper third of the form which is required to be printed in conformity with § 226.6(a) and which is unchallenged in this case.

### C. FAILURE TO DISCLOSE THE DUE DATES FOR PAYMENTS SUBSEQUENT TO THE FIRST PAYMENT

■ Plaintiffs argue that Magee's statements violated 12 C.F.R. § 226.8(b)(3) which provides in part the disclosure of:

The number, amount, and due dates or periods of payments scheduled to repay the indebtedness . . .,

since the disclosure statements contained the date of the first payment due (*e. g.*, Transaction # 1, November 25, 1976) but did not specify the due dates of subsequent payments. Defendant offered the testimony of Mr. Ball to the effect that every person knows that each month has at least 25 days in it and therefore as to Transaction # 1, the next payment would be due

on December 25, 1976. However, the Court is of the opinion that the Truth-in-Lending Act does not require a credit customer to make such an assumption and agrees with the court in *Powers v. Sims and Levin Realtors*, 396 F.Supp. 12, 19–20 (E.D.Va. 1975), *rev'd & modified on other grounds*, 442 F.2d 216 (4th Cir. 1976), that the failure to disclose the date for subsequent payments violates § 226.8(b)(3). Indeed in *Pennino v. Morris Kirschman & Co., Inc., supra*, the Fifth Circuit has found a similar failure to disclose a billing date (the closing date of a billing cycle) to be in violation of 12 C.F.R. § 226.7(b)(9):

The district court held that the defendant's statement adequately met the disclosure requirements of the Regulation.

The defendant's periodic statement in issue contained the term "billing date," under which was handwritten "1st." At the bottom of the statement the following language was included.

You may pay the last balance shown above before the billing date next month to save additional finance charges.

The defendant contends that it would be logical to assume that the "1st" also would be the billing date for the next month and thus that its disclosure satisfied § 226.7(b)(9). This court, however, is bound by the intent of Congress to eliminate the necessity of assumptions on the part of the consumer. Section 226.7(b)(9) requires full and meaningful disclosure without assumptions. Accordingly, we affirm on this issue.

526 F.2d at 372.

Thus, as to Transactions #'s 1, 2 and 3, defendant has violated § 226.8(b)(3).

### II. RECOVERY BY MADDOCK ON TRANSACTION # 1

■ Plaintiff Maddock contends that she is entitled to recover in her own right for the Truth-in-Lending violations in Transaction # 1, since as either an endorser or accommodation party on the instrument she was liable on the instrument. (*See* Exhibit

P–2.) (The Court has rejected her argument that she was a co-maker of the note.) Maddock cites the cases of *Berryhill v. Rich Plan of Pensacola*, 578 F.2d 1092, 1100 (5th Cir. 1978); *Davis v. United Companies Mortgage and Investment of Gretna, Inc.*, 551 F.2d 971, 972–73 (5th Cir. 1977) (double penalties for a husband and wife co-borrower since under Louisiana law both the husband and wife were jointly and severally liable for the entire debt); *Tarplain v. Baker Ford, Inc.*, 466 F.Supp. 1340 (D.R.I.1929), to support her contention. However, the reasoning of the above cases does not apply to the situation where there is an endorser or accommodation party to whom no disclosures are due and to whom no credit is extended. Moreover, the Fifth Circuit has expressed doubt with the recoveries in the *Berryhill* and *Davis* cases: "In the absence of precedent to the contrary, we might accept Rich Plan's position that the Berryhills should recover only one statutory penalty between them." 578 F.2d at 1100; "I do not think that Congress, in the Truth-in-Lending statute, intended to exact a double penalty when a husband and wife enter into a single transaction." 578 F.2d at 1101 (Rubin, J., concurring in part and dissenting in part). The Court rejects the argument that Maddock would be a "person" under the Act, *see* 15 U.S.C. § 1631(a), or a "customer" under Regulation "Z," *see* 26 C.F.R. § 226.2(a), and would be allowed the recovery of penalties for Truth-in-Lending violations under the Act on Transaction # 1.

### III. CREDITOR'S DEFENSES

■■■ Magee raises the creditor's defenses of "clerical error," 15 U.S.C. § 1640(c), and "good faith reliance," 15 U.S.C. § 1640(f). The Court rejects both of these defenses. As to Magee's argument of clerical mistake with regard to all of the claimed violations, this Court concludes that such a defense is unavailable as to all of the violations claimed by plaintiffs. As stated by the court in *Powers v. Sims and Levin Realtors*, 396 F.Supp. at 20 n.7:

> The defense [of clerical error] absolves creditors from liability only where they can show by a preponderance of the evidence that violations of the disclosure requirement were unintentional and of a typographical or arithmetical nature. *E. G. Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270, 281 (S.D.N.Y. 1971). Defendant's violation of the Act and Regulation Z which are catalogued in plaintiffs' contentions (2)–(5) [failure to print the terms "finance charge" and "annual percentage rate" in print more conspicuous than that used for other disclosures; failure to clearly and conspicuously disclose the total number of payments scheduled to repay the indebtedness; failure to state the total amount of the finance charge using the term "finance charge;" failure to utilize a recision notice printed on one side of a separate statement which identifies the transaction to which it relates] are clearly legal errors, not clerical mistakes, arising from its failure to conscientiously comply with the disclosure requirements of the Act. The disclosure and standardization policies of the Act would be vitiated should the Court construe § 1640(c) to excuse errors of law as well as mistakes, and this Court shall, accordingly, decline defendant's invitation to so do.

*See also Gallegos v. Stokes*, 593 F.2d 392 (10th Cir. 1979); *McGowan v. King*, 569 F.2d 845, 849 (5th Cir. 1978); *Ives v. W. T. Grant Co.*, 522 F.2d 749, 757 (2d Cir. 1975); *Haynes v. Logan Furniture Mart*, 503 F.2d 1161, 1166 (7th Cir. 1974). As to Magee's argument of good faith reliance on a rule, regulation, or interpretation of the Board, defendant has failed by a preponderance of the evidence to prove such a defense since it has not tendered to the Court any evidence of *actual* reliance and the evidence of reliance, e. g., what it has tendered, is insufficient to prove reliance by a preponderance of the evidence. *See, Charles v. Krauss*, 572 F.2d 544 (5th Cir. 1978); *Jones v. Community & Investment Corp.*, 544 F.2d 1228 (5th Cir. 1976); *Jacklitch v. Redstone Federal Credit Union*, 463 F.Supp. 1134 (N.D.Ala. 1979); *Tarplain v. Baker Ford, Inc., supra; Louis v. Walker-Thomas Furniture Co.*, 416 F.Supp. 514, 518 (D.D.C.1976).

## IV. EQUAL CREDIT OPPORTUNITY ACT

Plaintiff Maddock claims a violation by Magee of her rights under the Equal Credit Opportunity Act, specifically 15 U.S.C. § 1691(a)(3), which provides:

It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

(3) because the applicant has in good faith exercised any right under this chapter.

Plaintiff's claim is based on the contention that Magee unlawfully conditioned the loan on July 13, 1978, Transaction # 3, on her rendering the "settlement" document and thus Magee evaluated her creditworthiness using a prohibited basis, i. e., her exercise of rights under the Federal Consumer Credit Protection Act, an act within the same chapter of the Equal Credit Opportunity Act. This Court agrees. As a matter of law, plaintiff Maddock was in good faith exercising her rights under the Federal Consumer Protection Act, since this good faith was not disputed at trial. Maddock fit the statutory basis for setting forth a claim under § 1691(a)(3) since she was an "applicant," 12 C.F.R. § 202.3(c), who made application for a direct loan (credit), 12 C.F.R. § 202.3(h), from Magee, who was a "creditor," 12 C.F.R. § 202.3(j), under the definition of Regulation "B" with regard to a "credit transaction," 12 C.F.R. § 202.3(k). In evaluating Maddock's creditworthiness, Magee took into account a prohibited basis—her exercise of rights under the Truth-in-Lending Act.

■ The only rational explanation for plaintiff's signing the settlement document was that she was of the opinion that she would not be granted the loan without compromising her rights; indeed, her caution in re-drafting the settlement instrument shows that she was aware of this burdensome, illegal, and coercive treatment by Magee and tried to the best of her knowledge and ability, to protect herself. Even if this Court were to believe the evidence offered by Magee that it was not requiring the signing of the settlement document as a condition of the creditworthiness of Maddock (a factual finding that this Court cannot legitimately make from the facts and circumstances presented to the Court) plaintiff Maddock's reasonable feeling that this was the basis upon which she was being granted the emergency loan would alone compel this Court to make a finding on her behalf since under 12 C.F.R. § 202.5(a), Magee would have violated her rights and evaluated her application on a prohibited basis by making an oral statement to an applicant that would discourage on a prohibited basis a reasonable person from making or pursuing an application. Thus, even if Maddock was not actually compelled to render the document, Magee's conduct was sufficiently coercive that a reasonable person would believe that unless the settlement document were executed that the application would not be accepted. The Court finds that Magee required or coerced Maddock to sign the settlement document prior to allowing the application to be accepted and credit granted, even though the credit documents were previously prepared after the telephone call by Maddock to Mr. Ball as testified to by Ball and Mrs. Thomas. Thus, Magee used the documents as a carrot to induce the signature. Therefore, since Magee would not extend credit to Maddock without rendering the settlement document or made her reasonably believe that credit would not be extended without the document, Magee engaged in discrimination prohibited by the Equal Credit Opportunity Act and Regulation "B" promulgated thereunder, 15 U.S.C. § 1691(a)(3).

## V. VALIDITY OF THE SETTLEMENT DOCUMENT

■ Plaintiff Maddock claims that her settlement and release of her Truth-in-Lending claims (Exhibit P–28) is invalid since as a matter of law a plaintiff cannot release his Truth in Lending claims, see Parker v. DeKalb Chrysler Plymouth, 459 F.Supp. 184, 186–87 (N.D.Ga.1978); Bruford v. American Finance Co., 333 F.Supp. 1243, 1248 (N.D.Ga.1973), or if federal public poli-

cy does not prohibit such release, the document was void since it lacked consideration. *Bielkiewicz v. Rudisill*, 201 So.2d 136, 141 (La.App. 3d Cir. 1967); *Thomas v. Jones*, 353 So.2d 301, 303 (La.App. 1st Cir. 1977); *Dale v. Nassar*, 240 So.2d 775, 777 (La.App. 2d Cir. 1970), or the consideration given was against public policy and therefore was inadequate consideration, *see Van Horn v. Vining*, 133 So.2d 901 (La.App. 2d Cir. 1961); *Bardon's Employment v. Smith*, 359 So.2d 1284 (La.1978); *Jary v. Emmett*, 234 So.2d 530, 531 (La.App. 3d Cir. 1979). Pretermitting the question of whether or not one may release Truth-in-Lending claims, this Court finds that the settlement document lacked consideration, except for a consideration that under Louisiana public policy would be an illegal consideration, *i. e.*, the release of rights which would be a prohibited basis under federal law for the conditioning of a loan transaction.

Under Louisiana law, consideration is required for a valid, unilateral release by a plaintiff. La.Civ.Code art. 3071; *Doll v. Albert Weiblen Marble & Granite Co.*, 207 La. 769, 22 So.2d 59 (1945). This Court rejects defendant's argument that this document was a remission of a debt requiring no consideration. *See, e. g., Arender v. Gilbert*, 343 So.2d 1146 (La.App. 3d Cir. 1977).

As stated by the Louisiana Supreme Court in *Branch v. Alexander*, 231 La. 487, 494, 91 So.2d 767, 769 (1956), "A settlement or release of an obligation, to have legal validity, must possess the essential elements of any other contract." *Accord, Succession of LaHay*, 361 So.2d 1351, 1354 (La.App. 3d Cir. 1978) ("[a] compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing").

Plaintiff Maddock contends that the writing not only does not show within its four corners the requirements of a legal compromise, but also that it does not show what, if anything, the parties were going to have the "danger of losing" since Magee gave up absolutely nothing because it already had an obligation to consummate the loan on Mrs. Maddock's application because of her creditworthiness and because it could not evaluate her creditworthiness using a prohibited basis, *i. e.* that she was then exercising her rights under the federal Consumer Credit Protection Act. Maddock contends that since Magee gave up nothing, there is a failure of consideration. As stated by the Court in *Bielkiewicz v. Rudisill*, 201 So.2d 136, 141 (La.App. 3d Cir. 1967):

> A compromise is a bilateral contract. When one party has all to gain and nothing to lose, no compromise results.

This Court agrees. The only consideration/cause which defendant can reasonably aver played a part in the "settlement" transaction is the fact that it did, indeed, grant Mrs. Maddock the extension of credit she requested. Since the Federal Equal Credit Opportunity Act (binding on the states through U.S.Const. art. 6, cl. 2, the Supremacy Clause required Magee to make this third extension of credit if Mrs. Maddock was otherwise creditworthy, the loan itself cannot form adequate consideration. *See* 15a C.J.S. *Compromise and Settlement* § 9b ("a promise to do that which the law requires is not a sufficient consideration to support a compromise agreement"); *Thomas v. Jones*, 353 So.2d 301, 303 (La.App. 1st Cir. 1977) "Appellant correctly argues that an agreement to do what one is already bound to do is not cause for an agreement to do the same thing." See also, *Dale v. Nassar*, 240 So.2d 775, 777 (La.App. 2d Cir. 1970); (La.Civ.Code art. 3071). Furthermore, the Louisiana Civil Code provides that one cannot contravene laws enacted for the preservation of public order and good morals. In the case of *Van Horn v. Vining*, 133 So.2d 901, 907 (La.App. 2d Cir. 1961), the court stated:

> A fundamental principle of our law is that individuals cannot, by their agreements, derogate from the force of laws enacted for the preservation of the public order and good morals (LSA–C.C. art. 11),

and that whatever is done in contravention of a prohibitory law is null (LSA–C.C. art. 12). Thus as a general rule, all contracts or agreements which directly or indirectly involve, or have for their object, a violation of the law are illegal, and, generally, it is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum*. Such contracts or agreements are void in the sense of being enforceable.

In *Bardon's Employment v. Smith*, 359 So.2d 1284 (La.1978), Justice Marcus wrote: "Statutory rules may be either suppletive or imperative . . . On the other hand, rooted in public policy considerations, an imperative rule is applied without regard to the intention of the individuals concerned. A prohibitory law, as mentioned in article 12, is one that is cast in the imperative form, but exhibits a negative, rather than a positive command. *E. L. Burns Co., Inc. v. Cassio*, 302 So.2d 297 (La.1974). If a party's conduct contravenes a prohibitory law, pursuant to La.Civil Code art. 12, it is void and produces no legal consequences."

Since the Supremacy Clause makes the federal Equal Credit Opportunity Act's prohibited discrimination section applicable as the law of the land, it is asserted by plaintiffs to be a "prohibitory law" which was contravened by defendant's acts and/or omissions complained of herein, *see also Jary v. Emmett*, 234 So.2d 530, 531 (La.App. 3d Cir. 1970). Thus, the Court holds that La.Civ.Code art. 12 is an alternative basis for denying effect to Magee's purported consideration in support of the release, and need not reach Maddock's argument that her claims under Truth-in-Lending cannot be waived, *see, e. g., Parker v. DeKalb Chrysler Plymouth*, 459 F.Supp. 184 (N.D. Ga.1978); *Buford v. American Finance Co.*, 333 F.Supp. 1243, 1248 (N.D.Ga.1973); *cf. Brooklyn Savings Bank v. O'Neal*, 324 U.S. 697, 704, 65 S.Ct. 895, 901, 89 L.Ed. 1296 (1945).

## VI. *SUMMARY*

Thus, plaintiff Owens has proved by a preponderance of the evidence a violation of Truth-in-Lending with regard to Transaction # 1. Plaintiff Maddock has proved by a preponderance of the evidence violations of Truth-in-Lending as to Transactions #'s 2 & 3. Moreover, plaintiff Maddock has proved by a preponderance of the evidence a violation of the Equal Credit Opportunity Act, for which she is entitled to actual damages in the amount of $1,000.00 for mental anguish and humiliation, and since this Court finds by a preponderance of the evidence that punitive damages are warranted under the Act, $1,000.00 in punitive damages. Furthermore, as prevailing plaintiffs, they are entitled to reasonable attorney's fees.

For the reasons stated above,

IT IS ORDERED that judgment be entered in favor of plaintiff, Lois Owens, a/k/a Lois Williams, and Betty J. Maddock, and against defendants, Magee Finance Service of Bogalusa, Inc.

IT IS FURTHER ORDERED, that judgment be entered in favor of plaintiff, Lois Owens a/k/a Lois Williams and against defendant, Magee Finance Service of Bogalusa, Inc., in the amount of $414.14, which is twice the amount of the finance charge contracted in Transaction # 1, together with costs and a reasonable attorney's fee, under 15 U.S.C. § 1640(a)(2) and (3).

IT IS FURTHER ORDERED that judgment be entered in favor of plaintiff Betty J. Maddock, and against defendant Magee Finance Service of Bogalusa, Inc., in the amount of $843.62, which is twice the amount of the finance charge contracted in Transaction # 2, and in the sum of $100.00, which is a minimum penalty for a violation in reference to Transaction # 3 since twice the amount of the finance charge comes to less than $100.00, together with costs and reasonable attorney's fees under 15 U.S.C. § 1640(a)(2)(A)(i).

IT IS FURTHER ORDERED that judgment be entered in favor of the plaintiff, Betty J. Maddock and against defendant, Magee Finance Service of Bogalusa, Inc., in the amount of $1,000.00 in actual damages

and $1,000.00 in punitive damages for the violation of Equal Credit Opportunity Act, 15 U.S.C. § 1691e(b), together with costs and a reasonable attorney's fee, 15 U.S.C. § 1691e(d).

IT IS FURTHER ORDERED that counsel for the parties meet and confer to agree upon a reasonable attorney's fee. If counsel cannot within fifteen days of the date of this Court's Order reach an agreement and submit such a stipulation to the Court, counsel for plaintiff is ordered to submit a statement for time spent litigating this action, and the Court will determine reasonable attorney's fees and costs and will thereafter direct the Clerk of Court to enter judgment with respect to this case.