**Phillip T. REA and Judy Rea,
Plaintiffs-Appellees,**

v.

**WICHITA MORTGAGE CORPORATION
and Wichita Falls Savings
Association, Defendants-Appellants.**

No. 82–1301.

United States Court of Appeals,
Tenth Circuit.

Oct. 19, 1984.

---

Jack Banner of Wichita Falls, Tex., for defendants-appellants.

Kenneth I. Jones, Jr., Oklahoma City, Okl. (James S. Matthes, Jr., with him on brief) of Eagleton, Nicholson, Jones & Blaney, Oklahoma City, Okl., for plaintiffs-appellees.

Before McKAY, McWILLIAMS and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Wichita Mortgage Corporation (Wichita Mortgage) and Wichita Falls Savings Association (Wichita Savings) appeal from summary judgment granted in favor of plaintiffs, Phillip and Judy Rea. The Reas sued under section 5–202(2) of Oklahoma's version of the Uniform Consumer Credit Code (UCCC), Okla.Stat. tit. 14A, §§ 1–101 *et seq.* (1981 & Supp.1983), seeking to render void a loan to the Reas made by Wichita Mortgage. Defendants responded with a variety of defenses, including that they were entitled to the bona fide error defense found in section 5–202(7) of the statute. In granting summary judgment for the Reas, the district court failed to address the bona fide error defense. In view of this defense, we conclude that the district court improperly granted summary judgment. Accordingly, we reverse.

## I.

## BACKGROUND

Wichita Savings is chartered in Texas and is both state and federally regulated. Wichita Mortgage, also a Texas corporation, is a wholly-owned subsidiary of Wichita Savings. Until the end of 1978, Wichita Mortgage was licensed in Oklahoma to make, hold, sell, and assign first lien mortgages and notes on residential dwellings. It maintained one Oklahoma office staffed by a manager, two loan processors, and occasionally some clerical help. From 1969 to September 1978, Wichita Mortgage made over 18 million dollars worth of loans secured by residential real estate to individuals in Oklahoma.

Judy Rea was one of the two loan processors in the Oklahoma office. Her duties were to take loan applications, verify information in the applications, calculate interest rates, prepare documents, and perform other loan-related activities. During late 1977, Rea and her husband wanted to purchase a home under construction in Oklahoma City, and they sought a first mortgage loan from Wichita Mortgage. A loan application and other necessary papers were prepared and filed, and in May 1978, the parties entered into a loan agreement. Wichita Mortgage subsequently assigned the Reas' note and mortgage to Wichita Savings. Within a few months of signing the agreement, Judy Rea quit her job with Wichita Mortgage and began work at another financial institution. After she became delinquent on the loan note, she and her husband filed this suit demanding that all monthly payments be returned, that the loan be declared void, and that her interest and attorneys fees be paid, all based on the proposition that the loan violated Oklahoma's UCCC.

The Wichita loan agreement carries a contractual interest rate of 9.75 percent, but the actual interest rate on the loan was something in excess of ten percent. Under section 3–502 of the Oklahoma UCCC,

> "[u]nless a person is a supervised financial organization or has first obtained a license from the Administrator authorizing him to make supervised loans, he shall not engage in the business of
>
> (1) making supervised loans ...."

Okla.Stat. tit. 14A, § 3–502. A supervised loan is

> "a consumer loan in which the rate of the loan finance charge exceeds ten percent (10%) per year as determined according to the provisions on loan finance charge for consumer loans (Section 3–201)."

*Id.* § 3–501(1). Under the consumer remedies part of the UCCC,

> "[i]f a creditor has violated the provisions of this act applying to authority to make supervised loans (Section 3–502), the loan is void and the debtor is not

obligated to pay either the principal or loan finance charge. If he has paid any part of the principal or of the loan finance charge, he has a right to recover the payment from the person violating this act or from an assignee of that person's rights who undertakes direct collection of payments or enforcement of rights arising from the debt."

*Id.* § 5–202(2). The Reas contend they are entitled to the section 5–202(2) remedies because Wichita Mortgage was not a supervised lender entitled to charge an effective interest rate in excess of ten percent.

On cross-motions for summary judgment, the district court granted the Reas' motion and denied defendants'. On appeal, defendants argue that the UCCC does not apply to traditional first mortgage home loan transactions like this one, and that if it does, they are exempt from the supervised loan provisions of the UCCC. Alternatively, if they are governed by the supervised lender provisions, defendants assert that the district court improperly rejected their defense of estoppel, and that they are entitled to a bona fide error defense.

## II.

### EXEMPTIONS

Defendants argue that the UCCC does not, and was never intended to, apply to the "traditional first mortgage home loan transaction." Brief of Appellants at 32. They rely on an amendment to Okla.Stat. tit. 14A, § 1–202, which delineates the exclusions from the UCCC. In 1980, the Oklahoma legislature added an exclusion for

"loans made to enable the debtor to build or purchase a residence or to refinance such loan when made by a lender whose

loans are supervised by an agency of the United States or made by a Federal Housing Administration approved mortgagee unless the loan is made subject to this act by agreement . . . ."

*Id.* § 1–202(5).

Prior to the 1980 amendment, these kinds of loans were clearly covered by Oklahoma's UCCC unless the interest rate was below ten percent.[1] *See* Comment to Okla.Stat.Ann. tit. 14A, § 1–202. In Oklahoma, statutes are considered to have prospective operation only unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used. *State Board of Registration for Professional Engineers & Land Surveyors v. Engineered Coatings, Inc.*, 542 P.2d 508, 509 (Okla.1975); *Lincoln National Life Insurance Co. v. Read*, 194 Okla. 542, 156 P.2d 368, 378 (1944), *aff'd*, 325 U.S. 673, 65 S.Ct. 1220, 89 L.Ed. 1861 (1945); *Swatek Construction Co. v. Williams*, 177 Okla. 305, 58 P.2d 585, 587 (1935); *Good v. Keel*, 29 Okla. 325, 116 P. 777, 777 (1911). The Oklahoma legislature can clearly express its intent to make a statute or an amendment retroactive when it chooses to do so. *See, e.g.,* Okla.Stat. tit. 10, § 60.18(2) (1981). We can discern no such intent in section 1–202(5) of the UCCC.

Defendants also argue that another Oklahoma statute exempts them from the supervised loan provisions of the UCCC. They rely on what they contend is a conflict between sections 3–502 of the UCCC and section 65 of the Oklahoma Savings and Loan Code of 1970, Okla.Stat. tit. 18, §§ 381.1 *et seq.* (1981).[2]

Section 381.65 provides:

Wichita's liability under these remedy provisions is the very issue in this case.

---

**1.** Defendants' reliance on *Circle v. Jim Walter Homes, Inc.*, 654 F.2d 688 (10th Cir.1981), is misplaced. There the loans clearly were above ten percent interest, and therefore the very language of § 2–104(2)(b) excluded those transactions. *See id.* at 690–91. Their reliance on *Barnes v. Helfenbein*, 548 P.2d 1014 (Okla.1976), is also misplaced. In *Barnes*, the Oklahoma Supreme Court did not exempt the classic home mortgage from the UCCC provisions on disclosure and debtors' remedies. *See id.* at 1018.

**2.** This code provides for the regulation of savings and loan associations in Oklahoma and requires inter alia that such associations register with and obtain a certificate of authority from the State Bank Commissioner prior to conducting business. *See, e.g., id.* §§ 381.10–381.19.

"1. A foreign association which does not now have a certificate of authority from the Commissioner, or a federal association which does not have permission from the Federal Home Loan Bank Board to operate in this state, shall not be deemed to be transacting or engaging in business in this state, for the purposes of this act, by reason of the purchase or acquisition, holding or sale of loans secured by mortgages on Oklahoma real estate, or participating interests therein, or the foreclosure thereof and acquiring of title to such mortgaged real estate in satisfaction of the mortgage indebtedness."

*Id.* Section 3–502 of the UCCC provides:

"Unless a person is a supervised financial organization or has first obtained a license from the Administrator authorizing him to make supervised loans, he shall not engage in the business of

(1) making supervised loans; or

(2) taking assignments and undertaking direct collection of payments from or enforcement of rights against debtors arising from supervised loans."

■ Defendants essentially argue that if their actions are not in violation of the Savings and Loan Code, they cannot be in violation of the UCCC. We disagree. The fact that certain activities are not prohibited under one statute does not imply that the same actions may not violate other state statutes. The Savings and Loan Code and the UCCC are two separate and distinct statutes, enacted in furtherance of different legislative policies and objectives. Section 381.65 expressly provides that the actions delineated there will not be "deemed to be transacting or engaging in business ... *for the purposes of this act.*" (Emphasis added). To the extent that defendants are absolved from any wrongdo-

ing, it is clear that such absolution extends only to liability under the Savings and Loan Code.

### III.

### COMPLIANCE WITH THE ACT

Defendants also contend the district court erred in finding that Wichita Mortgage was not a supervised financial organization.[3] The court based its decision on a finding that Wichita Mortgage "does not receive deposits in Oklahoma under authority of the laws of either Oklahoma or the United States," within the meaning of § 1–301(17). Rec., vol. II, at 441. Defendants argue that this is a finding of "fact," that a genuine factual dispute exists over this question, and that the district court committed reversible error in granting summary judgment in favor of the Reas.

■ This argument misconstrues the nature of the district court's finding, which focused not on the issue of whether deposits were received but on the source of authority for such receipt by Wichita Mortgage. Defendants claimed that their compliance with domestication requirements of the Oklahoma Business Corporation Act, Okla.Stat. tit. 18, §§ 1.1 *et seq.* (1981), constituted sufficient authorization to receive deposits within the meaning of section 1–301(17) of the UCCC. After reviewing the relevant statutes and Oklahoma case authority, the district court concluded:

"The domestication requirements of the Business Corporation Act, when complied with, merely permit a foreign corporation to transact business within the State of Oklahoma. Where the conduct of certain specific business activities requires a person to fulfill certain specified prerequisites as a condition precedent to the transaction of those activities, a general

---

**3.** § 1–301(17) provides:

" 'Supervised financial organization' means a person, other than an insurance company or other organization primarily engaged in an insurance business

(a) organized, chartered, or holding an authorization certificate under the laws of this state

or of the United States which authorizes the person to make loans and to receive deposits, including a savings, share, certificate or deposit account; and

(b) subject to supervision by an official or agency of this state or the United States other than the Oklahoma Securities Commission."

authorization to transact business will not obviate the necessity of compliance with the particularized prerequisites." Rec., vol. II, at 439–40. After noting that defendants had made no claim or showing that Wichita Mortgage was specifically authorized to receive deposits or had complied with particular prerequisites of any statutes relevant to such deposits, the district court correctly concluded that Wichita Mortgage did not qualify as a supervised financial organization within the meaning of § 1–301(17).

■ Defendants also claim that the trial court improperly placed the burden on them to show that Wichita Mortgage was authorized to receive deposits. On a motion for summary judgment, the burden is on the moving party to show the absence of a genuine issue of any material fact, and the pleadings and other documentary evidence must be construed in favor of the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). However, "once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." *Id.* at 519 (quoting *Coleman v. Darden*, 595 F.2d 533, 536 (10th Cir.1979), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979)). In support of their motion for summary judgment, the Reas introduced evidence that Wichita Mortgage was not authorized to receive deposits under the laws of Oklahoma or the United States. Defendants introduced no evidence

to the district court on this aspect of the issue of authorization. There being no genuine issue of material fact, the court correctly concluded that Wichita Mortgage was not so authorized.

IV.

ESTOPPEL AS A DEFENSE

Defendants also argue that because of Judy Rea's knowledge of, and participation in, the details and processing of the loan, the Reas are estopped from asserting a violation of the UCCC.[4] We are not persuaded.

■ Oklahoma clearly requires a proponent of a claim of estoppel to establish inter alia a false representation or concealment of facts and detrimental reliance on the misrepresentation or concealment. *Western State Hospital v. Stoner*, 614 P.2d 59, 64 (Okla.1980); *see Allied Steel Construction Co. v. Employers Casualty Co.*, 422 F.2d 1369, 1371 (10th Cir.1970); *Marshak v. Blyth Eastman Dillon & Co., Inc.*, 413 F.Supp. 377, 383 (N.D.Okla.1975). The burden of proving all the essential elements of estoppel is on the party asserting it. *Tom W. Carpenter Equipment Co., Inc. v. General Electric Credit Corp.*, 417 F.2d 988, 990 (10th Cir.1969).

■ Defendants' claim of estoppel is not based on fraud or misrepresentation in connection with setting the interest rate but solely on the extent to which Judy Rea actively participated in the preparation of the loan papers. Defendants do not assert that they relied on any conduct by the Reas' in deciding to make the loan in excess of ten percent.[5] The violation of the

---

4. § 1–103 of the UCCC provides:
 "Unless displaced by the particular provisions of this act, the Uniform Commercial Code and the principles of law and equity, including the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause, supplement its provisions."

5. In support of their estoppel defense, defendants rely on a number of cases involving usurious transactions in which a plaintiff borrower,

because of his own wrongdoing and unclean hands, was held in *pari delicto* with the lender and thus denied relief by the courts. In order for the borrower in a usurious transaction to be estopped from asserting usury as a defense, however, there must be a showing of fraud or wrongdoing on his part. *Jue v. Bass*, 299 F.2d 374, 378 (9th Cir.1962); *Massie v. Rubin*, 270 F.2d 60, 62 (10th Cir.1959). In such situations, a refusal to hold that a borrower is estopped from the defense of usury would permit him to take advantage of his own wrongdoing and un-

UCCC and any resulting liability of defendants is solely attributable to defendants' belief that Wichita Mortgage did not need a lending license, not to any conduct on the part of Judy Rea. The trial court properly rejected the defense of estoppel.

## V.

### THE BONA FIDE ERROR DEFENSE IN SECTION 5-202(7)

 Defendants' final argument is that Wichita Mortgage relied in good faith on the advice of counsel in deciding it did not need a license to make supervised loans, and that this kind of reliance constitutes a defense under Okla.Stat. tit. 14A, § 5-202(7). Subsection 5-202(7) provides creditors with a "bona fide error" defense.

> "If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected."

*Id.* § 5-202(7). Wichita Mortgage presented evidence below that when it began to increase its loan interest rates above ten percent, it sought legal advice on whether it would need licensing as a supervised lender in Oklahoma.[6] Wichita Mortgage contends that the loan to the Reas was made in reliance on advice of counsel that it was not legally required to obtain a supervised lender's license in Oklahoma. The Reas respond that errors in legal judgment are not "bona fide errors" within the meaning of section 5-202(7).

 The Oklahoma UCCC provides two kinds of debtor remedies. One provides debtors with a right to legal damages for violations of the UCCC disclosure requirements. *See id.* at § 5-203. The relief for disclosure violations is limited to damages equal to

> "(a) any actual damage sustained . . .;"
>
> "(b) in the case of an individual action twice the amount of the credit service or loan finance charge in connection with the transaction, . . . but the liability pursuant to this part of this paragraph shall be not less than One Hundred Dollars ($100.00) nor more than One Thousand Dollars ($1,000.00) . . . ."

and court costs plus attorneys fees. *Id.* The other type of remedy provides debtors with quasi-equitable relief by voiding certain transactions that violate specific parts of the act. *See id.* § 5-202. These are the remedies, specifically § 5-202(2), on which the Reas rely in this case.

Both section 5-202 and section 5-203 have "bona fide error" defenses. *See id.* §§ 5-202(7), 5-203(3). Although the language employed in both is similar, the defenses are different in significant respects. The defense relevant here, section 5-202(7), provides:

> "If the creditor establishes by a preponderance of evidence that a violation is unintentional *or* the result of a bona fide error no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected."

*Id.* (emphasis added). The defense relevant to disclosure violations, section 5-203(3), provided at the time the lawsuit was filed:

> "A creditor may not be held liable in any action brought under this section for a violation of this Act if the creditor shows by a preponderance of evidence that the violation was not intentional *and* resulted from a bona fide error *notwithstanding* the maintenance of procedures reasonably adapted to avoid the error."

*Id.* (emphasis added). In 1982 the Oklahoma legislature amended section 5-203(3) to follow an identical amendment to the

---

clean hands. There are no analogous allegations or evidence in this case.

**6.** This evidence is contained in answers to interrogatories, which may be considered in connection with motions for summary judgment. Fed. R.Civ.P. 56(c); *Greene v. United States,* 447 F.Supp. 885, 890 n. 2 (N.D.Ill.1978). The an-

swers were sworn to by Wichita's attorney, a practice entirely acceptable under Fed.R.Civ.P. 33. *See Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 508 & n. 36 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978); *Greene,* 447 F.Supp. at 890 n. 2.

bona fide error defense contained in the Federal Truth-in-Lending Act, 15 U.S.C. § 1640(c) (1982).[7] Both the federal and state amendments added substantially the following:

> "A bona fide error includes, but is not limited to, a clerical, calculation, computer malfunction and programming, and printing error, *but not an error of legal judgment with respect to a person's disclosure obligations under this title."*

Okla.Stat. tit. 14A, § 5–203(3) (emphasis added). *Compare with* 15 U.S.C.A. § 1640(c) (1982), *and* Note, "Text of Section Effective Until October 1, 1982," provided as commentary following § 1640 in 15 U.S.C.A. This language precluding an error in legal judgment was not added to section 5–202(7) of the UCCC.

▮▮▮ The Reas rely heavily on this amendment to section 5–203(3).[8] They argue that the failure similarly to amend the bona fide error provision in question, section 5–202(7), was merely "inadvertence" by the Oklahoma legislature. The Reas contend that we should in effect read the 1982 amendment to section 5–203(3) into section 5–202(7).

We are unwilling to accept this suggestion. To begin with, we find it controlling that the Oklahoma legislature expressly amended section 5–203(3) so as to preclude bona fide legal error as a defense, and at the same time left section 5–202(7) untouched. In the absence of any evidence or authority to the contrary, we are unwilling to attribute this simply to legislative inadvertence or error. The comment notes to section 5–203 after the 1982 amendment state that "errors of law as to the disclosure obligation under the Oklahoma Code are not a defense." *See* Comment to Okla. Stat.Ann. tit. 14A, § 5–203 (1983). By negative inference, such errors may be a defense where other types of UCCC violations are concerned and section 5–202(7) is applicable.

In addition, there is a major difference between section 5–202(7) and section 5–203(3). As we have noted, the remedy for violating section 5–203(3), the disclosure section, is limited to damages not to exceed $1,000. On the other hand, the penalty for violating section 5–202(7) is severe—the loan is voided and the debtor may recover both the principal and interest that he has paid. Given the greater severity of the penalty, it seems logical that a creditor

---

7. In amending § 5–203(3), the Oklahoma legislature was not attempting to clarify the state law. It merely sought to follow the federal amendment. The language in the Truth-in-Lending Act's bona fide error provision is identical with that found in Okla.Stat.Ann. tit. 14A, § 5–203(3). The Oklahoma legislature copied the amendment to the Truth-in-Lending Act "to obtain and preserve the Oklahoma exemption" to the Act. *See* Comment to *id.* § 5–203. By providing under Oklahoma law for disclosure of the terms of consumer credit in a manner deemed to be substantially similar to or in excess of the federally-mandated requirements, Oklahoma maintains the right "to regulate disclosure in consumer credit transactions without the enforcement of Federal law by Federal authorities in the State of Oklahoma." *See* Okla. Stat.Ann. tit. 14A, Consumer Credit Code: Commentary by Bryce A. Baggett and Fred H. Miller, p. 6 (1983); 15 U.S.C. § 1633 (1982).

8. The Reas also rely on case law interpreting the prior version of 15 U.S.C. § 1640(c). Had this case arisen under section 5–203 from a violation by Wichita Mortgage of the UCCC's disclosure requirements, it was certainly arguable even prior to the amendment that errors in legal

judgment did not fall within the scope of that section's bona fide error provision. Case law interpreting the federal bona fide error defense in the Truth-in-Lending Act was in conflict prior to the 1982 change. *See Ives v. W.T. Grant Co.,* 522 F.2d 749, 757 (2d Cir.1975). However, the weight of authority apparently supported the views espoused in *Ratner v. Chemical Bank,* 329 F.Supp. 270 (S.D.N.Y.1971). *Ratner* held that 15 U.S.C. § 1640(c) applied only to clerical types of errors. *See McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir.1978); *Ives,* 522 F.2d at 758; *Palmer v. Wilson,* 502 F.2d 860, 861 (9th Cir. 1974); *Bailey v. Defenbaugh & Co. of Cleveland, Inc.,* 513 F.Supp. 232, 237 (N.D.Miss.1981); *Juanico v. Richardson Ford Sales, Inc.,* 480 F.Supp. 491, 497 (D.N.M.1979).

As we discuss above, disclosure violations are treated very differently from the violation of other sections of the UCCC. Consequently, we believe that cases interpreting defenses to the similar disclosure violation section of the Truth-in-Lending Act are inapposite to an interpretation of the bona fide error defense in § 5–202(7).

should have a greater number of defenses to the claim that it violated the licensing provisions of the UCCC.

 Moreover, reliance on the advice of legal counsel is recognized as a valid defense in both civil and criminal contexts. While such reliance is not an absolute defense, it is a factor to be considered in determining a defendant's good faith, willfulness, or illegal intent. *See, e.g., Bier v. Fleming,* 717 F.2d 308, 313 (6th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984) (civil action under 42 U.S.C. § 1983); *J.J. Newberry Co. v. NLRB,* 645 F.2d 148, 152 (2d Cir.1981) (unfair labor practice violation); *Sherr v. Winkler,* 552 F.2d 1367, 1375 (10th Cir. 1977) (tort suit against bankruptcy trustee for negligence and misconduct); *United States v. Conforte,* 624 F.2d 869, 876 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980) (criminal prosecution for tax evasion); *United States v. McLennan,* 563 F.2d 943, 946 (9th Cir. 1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978) (criminal prosecution for false statements to United States governmental agency); *United States v. Finance Committee to Re-Elect the President,* 507 F.2d 1194, 1198 (D.C. Cir.1974) (violation of federal election campaign laws); *United States v. Diamond,* 430 F.2d 688, 694–95 (5th Cir.1970) (criminal prosecution for mail fraud); *United States v. Custer Channel Wing Corp.,* 376 F.2d 675, 683 (4th Cir.), *cert. denied,* 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967) (criminal contempt prosecution for violation of 1933 Securities Act registration requirements). Section 5–202(7), by providing a defense for unintentional or good faith errors, clearly makes a creditor's intent or state of mind relevant to the issue of liability under the UCCC. Because reliance on advice of legal counsel may be relevant to a creditor's good faith, we hold that such reliance is within the scope of the section 5–202(7) defense.

 We do not believe that the availability of good faith legal error as a defense will serve to thwart the policy of consumer protection that underlies the UCCC. Any creditor attempting to use this affirmative defense must establish good faith error by a preponderance of the evidence. *See* Okla.Stat. tit. 14A, § 5–202(7). In addition, where, as in this case, the error is predicated upon reliance on legal advice, a creditor must show that such reliance was reasonable under the circumstances. The creditor must also show that it fully disclosed all of the facts to its counsel and that counsel specifically advised the course of conduct actually taken by the creditor. *See, e.g., United States v. McLennan,* 563 F.2d at 946; *United States v. Finance Committee to Re-Elect the President,* 507 F.2d at 1198; *United States v. Diamond,* 430 F.2d at 694; *Bisno v. United States,* 299 F.2d 711, 720 (9th Cir. 1961), *cert. denied,* 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962). Finally, we note that the UCCC provides for significant criminal penalties and administrative sanctions for an unlicensed lender who makes a supervised loan. *See* Okla.Stat. tit. 14A, §§ 5–301, 6–108, 6–113. The statute does not provide a bona fide error defense to a creditor in these instances, and our holding in no way adversely affects the ability of state criminal and administrative enforcement agencies to regulate or to penalize unlicensed lenders.

 Accordingly, we conclude that good faith errors in legal judgment are included within the bona fide error defense of section 5–202(7) of the Oklahoma UCCC. Wichita Mortgage asserts that it attempted to comply with the law and in good faith believed that it did not need a license, relying on the erroneous advice of legal counsel. Whether it in fact so relied is a fact question that cannot be decided on summary judgment. *See* Fed.R.Civ.P. 56(c).

The summary judgment in favor of the plaintiffs is reversed. The case is remanded for further proceedings consistent with this opinion.