In re AMERICAN CABLE PUBLICA-
TIONS, INC., a Colorado
corporation, Debtor.

Matthew D. SKEEN, Trustee, Plaintiff,

v.

CHASE MANHATTAN BANK, a National
Banking Association; Bowen & Milas,
Inc., a Michigan corporation; SSK & F,
Inc., a New York corporation; Marvin
W. Moll; Douglas E. Moll; Oliver E.
Frascona; Kenneth Allen; Guy Van
Heusden; and B.J. Batchelder, Defend-
ants.

and

Cable TV Magazine, Inc., a New York
corporation, Intervenor-Defendant.

GEORGE BANTA, INC., a Wisconsin
corporation, Plaintiff,

v.

Matthew D. SKEEN, Trustee,
Defendant.

and

Oliver E. FRASCONA, Defendant and
Third-Party Plaintiff,

v.

Paul GASTON, William J. Wipperfurth,
Paul N. Eggert, Thomas Parker and
Robert Bowen, Third-Party Defendants.

Bankruptcy No. 81J1978.
Civ. A. No. 83–K–588.

United States District Court,
D. Colorado.

June 26, 1986.

James E. Nesland, John V. McDermott, Ireland, Stapleton, et al., Denver, Colo., for defendant Batchelder.

Alan C. DeMuth, DeMuth, Kemp & Backus, Denver, Colo., for defendant SSK & F, Inc.

Joseph J. Bronesky, Sherman & Howard, Denver, Colo., for defendants Moll & Moll.

Richard M. Daily, Davis, Graham & Stubbs, Denver, Colo., for defendants SSK & F & Banta Co.

James R. Clark, Foley & Lardner, Milwaukee, Wis., for Banta Co.

Gordon Greiner, Holland & Hart, Denver, Colo., for defendants Bowen & Milas, Inc. & Cable TV & 3rd Pty Defts Wipperfurth, Eggert & Parker.

Kenneth Allen, Guy Van Huesden, Melbourne, Fla., pro se.

Lee D. Weinstein, Frascona, McClow & Joiner, Boulder, Colo., for defendant Frascona.

Edward T. Ramey, Denver, Colo., trustee for Skeen.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This matter is now before me on defendants Marvin and Douglas Molls' motions for summary judgment, pursuant to Fed.R. Civ.P. 56. Before addressing the parties' arguments on these motions, I shall set forth the relevant undisputed facts and standards for decision.

### I. BACKGROUND

Plaintiff Cable TV Magazine, Inc. was created in 1980 to publish a listing of programs offered by cable television systems. Soon after the first issue was published, CTVM encountered financial difficulties. In March, 1981, CTVM entered into an agreement to sell its assets to American Cable Publication, Inc.

Defendants Donald and Marvin Moll were shareholders of ACP at the time the agreement was made. A provision in the agreement gave the Molls an option to withdraw from the transaction if certain conditions precedent were not performed on or before April 3, 1981. On April 8, 1981, the Molls exercised their right to withdraw. ACP published the April issue of the cable magazine and then went bankrupt.

On November 2, 1982, trial commenced in the United States Bankruptcy Court for the District of Colorado concerning matters in the bankruptcy proceeding of ACP. Judge Roland J. Brumbaugh presided and subsequently issued a memorandum opinion of his findings with regard to the issues presented. *See In re American Cable Publications, Inc.*, No. 81–J–1978 (Bkr.D. Colo. Dec. 3, 1982).

■ On March 16, 1983, defendant Bowen & Milas, Inc. and CTVM requested that the trial of their crossclaims against certain defendants, including the Molls, be transferred to this court. BMI and CTVM originally brought these crossclaims in the bankruptcy proceedings and requested that these matters be tried to a jury. Bankruptcy judges may not, however, conduct jury trials. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Thus, defendants' motion to transfer their crossclaims was granted.

### II. STANDARDS FOR DECISION

Summary judgment is a drastic remedy. The Tenth Circuit has cautioned that any relief pursuant to Rule 56 should be applied with care. *See Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir.1973). The burden is on the moving party to show the absence of a genuine issue of material fact. Unless the moving party can demonstrate entitlement beyond a reasonable doubt, summary judgment must be denied. *Norton v. Lid-*

*del,* 620 F.2d 1375, 1381 (10th Cir.1980). Pleadings and factual inferences tending to show issues of material fact must be viewed in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Rea v. Wichita Mortgage Corp.,* 747 F.2d 567, 573 (10th Cir.1984). A party opposing summary judgment may not, however, rest on allegations contained in pleadings to rebut the movant's factual proof in support of the motion for summary judgment. The party opposing the motion must respond with specific facts demonstrating genuine issues requiring resolution at trial. *Adickes,* 398 U.S. 144, 157–59, 90 S.Ct. at 1608–09, *Rea,* 747 F.2d 567, 573.

### III. DEFENDANTS' FIRST MOTION FOR SUMMARY JUDGMENT

CTVM's fifth claim for relief is for the restitution of the value of the assets transferred by CTVM to ACP and the value of CTVM prior to the execution of the agreement. CTVM bases this claim on the substantial breach of the agreement by ACP and its shareholders.

Defendants argue, first, that this claim should be dismissed because the assets were transferred to ACP and not to them as individual shareholders. According to defendants, even if ACP were shown to have breached the agreement with CTVM, a claim for restitution against the Molls cannot stand as a matter of law.

The purpose of restitution is to require the wrongdoer to restore what he has received from the injured party. The wrongdoer is required to put the injured party in as good a position as that occupied by him before the contract was made. *See 5 Corbin on Contracts* § 1107 at 573 (1964). The Colorado Court of Appeals has held that, "[i]f there is a breach by non-performance which goes to the essence of a contract, an appropriate measure of damages is an award to the injured party or restitution of any benefit which he has conferred upon the other party." *Ed Hackstaff Concrete v. Powder Ridge Condominium A*

*Owners' Ass'n, Inc.,* 679 P.2d 1112, 1114 (Colo.App.1984). Essentially, the standard used in Colorado for restitution is to restore substantially the status quo of the injured party. *Smith v. Huber,* 666 P.2d 1122 (Colo.App.1983).

"If the terms [of a contract] are clear, the intent of the parties must be ascertained from the contract itself." *Harrison Western Corp. v. Gulf Oil Co.,* 662 F.2d 690 (10th Cir.1981) (citations omitted). In this case, the contract clearly stated that CTVM would transfer its assets to ACP. This provision is not ambiguous and must be construed without resort to extrinsic evidence. It is clear that the draftsman knew how to bind the shareholders of ACP as they are bound elsewhere in the agreement. In fact, the beginning of the agreement notes that the shareholders of ACP are entering the agreement "for the limited purpose hereinafter described." Had the parties intended for the shareholders to receive the assets, this intent should have been set forth. I conclude, therefore, that CTVM's assets were transferred to ACP and not to defendants as individual shareholders.

The next question is whether these defendants, as shareholders of ACP, may be held liable for the debts of ACP. In *Fink v. Montgomery Elevator Co. of Colorado,* 161 Colo. 342, 421 P.2d 735, 739 (Colo.1966), the Colorado Supreme Court held:

> [I]n order to hold stockholders liable for corporate obligations, it must be shown either that the corporate entity was used to defeat public convenience, or to justify or protect wrong, fraud or crime, or the situation in question was one which justified application of the alter ego doctrine.

More recently, *Fink* was cited in *Hill v. Dearmin,* 44 Colo.App. 123, 609 P.2d 127, 128–29 (1980) where the Colorado Court of Appeals held:

> [B]ecause the facts do not demonstrate that the corporation was a "mere instrumentality for the transaction of [the stockholders'] own affairs," ... or that the corporation was used to perpetrate any fraud or to defeat any rightful claim,

... we conclude that the trial court erred in setting aside the corporate form and in imposing personal liability.

(citations omitted).

Under Colorado law, the corporate veil may be pierced and the shareholders will be held personally liable if the shareholders are: 1) using the corporation as a mere instrumentality for the transaction of their own affairs; 2) using the corporation to perpetrate a fraud; 3) using the corporation to defeat any rightful claim; or 4) using the corporation to defeat public convenience. *See Sell v. United States*, 336 F.2d 467 (10th Cir.1964); *In re Balducci Oil Co., Inc.*, 33 B.R. 847 (Bkr.D.Colo. 1983); *LaFond v. Basham*, 683 P.2d 367 (Colo.App.1984).

CTVM has not asserted that any of these exceptions apply to defendants and nothing from the record convinces me that I should rule contrary to the general rule in Colorado that shareholders are not liable for the debts of the corporation. *See Renault Inc. v. Marble*, 317 F.2d 265, 267 (10th Cir. 1963). I conclude that defendants are not liable to plaintiff for the value of the CTVM or the assets transferred to ACP under the terms of the agreement. Therefore, CTVM's claims against these defendants for restitution are dismissed.

■ CTVM also claims it is entitled to be put back in the financial position it held before the execution of the agreement. CTVM asserts that the value of the magazine as an ongoing business at the time of the sale was $5,000,000.00. As stated above, CTVM has no cause of action for restitution against the Molls individually. However, assuming, *arguendo*, that a cause of action did exist, the bankruptcy judge's finding that CTVM was insolvent at the time of the sale, renders CTVM's claim invalid. This finding can be set aside only if it was clearly erroneous. *See* Bankr. Rule 8013; *Lease America Corp. v. Eckel*, 710 F.2d 1470 (10th Cir.1983). Judge Brumbaugh found:

All of the evidence points to the fact that CTVM was insolvent on March 31, 1982. It was not only insolvent, it was on the verge of losing its most valuable asset, i.e., whatever reputation and good name it had developed for its product—a monthly cable television programming guide. CTVM had no funds to pay for the publication of the April issue, and without the timely production, each month, of its guide, it would lose all credibility in the marketplace.

*In re American Cable Publication, Inc.*, No. 81–J–1978, slip op. at 2 (Bkr.D.Colo. Dec. 3, 1982).

After careful review of the record, I conclude Judge Brumbaugh's decision was clearly correct. Even if CTVM had a cause of action for restitution against the Molls individually, to put CTVM in the same position it held before the execution of the agreement would be to put it back to its insolvent state. Thus, defendants' motion for summary judgment is granted with respect to CTVM's fifth claim for relief.

■ In its sixth and seventh claims for relief, CTVM seeks recovery of royalties it was allegedly denied under the agreement which were to be paid if and when the magazine's circulation reached a cumulative total of 2,000,000 copies. Generally, "[d]amage awards in contract cases attempt to place the parties in the same financial position they would have occupied had the contract terms been filled." *Republic National Life Insurance Co. v. Red Lion Homes, Inc.*, 704 F.2d 484, 488 (10th Cir.1983). In the agreement between the parties in this case, defendants guaranteed the publication of 200,000 copies of the cable magazine for the months of May through July, 1981. The agreement also provided for a sliding royalty scale under which CTVM was entitled to royalties once the circulation of the magazine reached a cumulative total of 2,000,000 copies. Nothing in the agreement, however, required defendants or ACP to publish more than the 200,000 copies per month for this period.

Defendants assert that CTVM's claims for royalties are too speculative and, thus, the sixth and seventh claims should be

dismissed under Colorado law. The rules for lost profits are similar to the rules applied in attempts to recover lost royalties. *See Contemporary Mission, Inc. v. Famous Music Corp.,* 557 F.2d 918, 926 (2d Cir.1977); *Freund v. Washington Square Press, Inc.,* 34 N.Y.2d 379, 357 N.Y.S.2d 857, 314 N.E.2d 419 (1974); *Bloor v. Falstaff Brewing Corp.,* 601 F.2d 609 (2d Cir. 1979). The law in Colorado regarding lost profits is clear:

Lost profit awards in Colorado are not permitted if either the amount of the profits that would have been earned or the fact that the plaintiff would have earned them is too speculative to determine.... However, once the loss of profits is shown to be attributable to the breach, recovery will not be denied simply because the amount of profit lost is difficult to ascertain.

*Republic National Life Insur. Co. v. Red Lion Homes, Inc.,* 704 F.2d 484, 489 (10th Cir.1983) (citations omitted). Moreover, in *Cope v. Vermeer Sales & Service of Colorado, Inc.,* 650 P.2d 1307 (Colo.App.1982), it was held that "[t]he rule which precludes recovery of uncertain and speculative damages applies only where the fact of damages is uncertain, not where the amount is uncertain." *Id.* at 1309 (citations omitted); *see also Great West Food Packers v. Longmont Foods,* 636 P.2d 1331 (Colo.App. 1981). Further, in *Johnson v. Miller,* 596 F.Supp. 768 (D.Colo.1984), I stated that "Colorado law provides that uncertainty as to the amount of damages does not bar recovery so long as the existence of damage is factually established." *Id.* at 773 (citations omitted); *see also A to Z Rental Inc. v. Wilson,* 413 F.2d 899, 908 (10th Cir.1969).

The bankruptcy judge found no evidence that CTVM would have received the profits claimed under the terms of the contract. He found:

All other balances due to CTVM creditors would be delayed until the magazine became successful—and no one had an educated opinion as to when that would be—although there was some testimony it would be at least a year before any

funds would be forthcoming to CTVM from the royalties it was to receive under the contract.

*In re American Cable Publications, Inc.,* No. 81–J–1978, slip op. at 5. Furthermore, the agreement on its face indicates that CTVM's royalties were conditioned on whether ACP published more copies of the magazine than required under the agreement or on whether ACP continued publishing the magazine for a longer time than required under the agreement.

CTVM has failed to prove the existence of damages. Moreover, CTVM failed to establish that its alleged damages were attributable to a breach of the agreement. CTVM's receipt of royalties was uncertain even if defendants did not breach the contract to publish 200,000 issues per month. The Colorado rule that precludes recovery for speculative and uncertain damages clearly applies to this case. Speculative and uncertain damages are not recoverable when the existence of damages is speculative and uncertain. CTVM's claim for royalties is entirely speculative. As a matter of law, therefore, defendants' motion for summary judgment is granted with respect to CTVM's sixth and seventh claims for relief.

## IV. SECOND MOTION FOR SUMMARY JUDGMENT

Defendants filed a second motion for summary judgment seeking dismissal of CTVM's fifth claim for relief on grounds different from those asserted in its first motion. I need not address the arguments asserted in the second motion, however, since CTVM's fifth claim for relief has been dismissed.

IT IS THEREFORE ORDERED:

1. Defendants' first motion for summary judgment is granted. CTVM's fifth, sixth, and seventh claims for relief are dismissed as against defendants Donald and Marvin Moll.

2. Defendants' second motion for summary judgment is denied as moot.

3. If it has not already been dismissed, CTVM's fourth claim is dismissed as against Marvin Moll since this claim has been settled.